THE PEOPLE EX REL. ALEXANDER CHAPOTON V. THE COMMON COUNCIL OF THE CITY OF DETROIT.

*Conflict of laws—Salaries of city officers.*

A new law cannot be controlled by an old one unless that intent is plainly expressed.

The charter of Detroit by a provision made in 1871 forbids the reduction of the salary of any city officer during his term. Act ·392 of 1873, creating a Board of Public Works, provided that "each member of the board shall receive such salary per annum as the Common Council may *from time to time* establish." *Held* that the provision in the charter had never applied to any public board and could not restrict later legislation containing independent provisions concerning salaries; and that under the act of 1873 the council could reduce the salary of a member of the Board of Public Works during his term of office.

MANDAMUS. Submitted April 9. Decided April 16.

*D. C. Holbrook* for relator.

*Wm. C. Maybury* and *F. A. Baker* for respondent. A municipal corporation can reduce the salaries of its officers during their term unless restrained by its charter. 1 Dillon Mun. Corp., §§ 168–172.

CAMPBELL, C. J. Relator is one of the Board of Public Works of Detroit, appointed January 30, 1874, and reappointed for four years from January 30, 1877. On the 11th of February, 1877, his salary was fixed for the ensuing year at $3000, as it had been every year theretofore. December 22d, 1877, it was fixed for the second year at $2500.

He claims this to be in violation of section 23 of chapter 5 of the charter of Detroit, which is as follows:

"The Common Council shall have power to provide for and regulate the election and appointment of all officers, and for their removal from office, and for the filling of vacancies, subject to the provisions of law; and may authorize and regulate the demand and receipt, by offi-

cers, of such fees and costs, and in such cases as the council may deem reasonable. It may also fix and regulate the compensation of all officers elected or appointed under or by virtue of any act relating to said city, except as may be otherwise provided; but the compensation of no officer, fixed by an annual or periodical salary, shall be diminished during the term for which he was elected or appointed; nor shall the salary of any officer be increased during his term of office, unless by a two-thirds vote of said council." L. 1871, vol. 2, p. 1371-2.

This section is supposed, and was perhaps intended, to stand in lieu of one of the subdivisions of section 22 as before existing, which was confined in its operation to officers appointed under the charter. It is not important in the present case to determine its effect on the old section, inasmuch as its language shows a broader intent and covers the same as well as more ground.

The act of 1873, providing for a Board of Public Works, provides for the nomination by the mayor and confirmation by the council of three persons for terms (after the first allotment) of four years each, from the third Tuesday in January in each year. And it was declared that "each member of said board shall receive such salary per annum as the Common Council may from time to time establish." L. 1873, vol. 3, p. 175.

The question on the proceedings before us is whether Mr. Chapoton is entitled to a salary of $3000 during his present term of office, or whether the reduction is valid.

The amendment of 1871 was broad enough, as it literally reads, to cover all offices under existing laws not making any different provision.

It must be observed, however, that at the date of that act, there were few if any persons holding office under acts "relating to said city," whose salary was not expressly removed from the control of the council wholly or chiefly. The Water Commissioners, Police Board, Inspectors of House of Correction, Police Justice, Board of Education and Fire Commissioners, were the chief if not the only officers not appointed under the charter, and the council could not exercise over any of these the

powers mentioned in section 23. The Legislature of 1871, at the same time when the charter amendments were passed, considered with them and adopted two acts creating a Board of Park Commissioners, made quite independent of city compensation under that section, and a Board of Public Works whose salaries were fixed by statute. L. 1871, vol. 2, p. 1322; vol. 3, p. 273. Both of these acts were legally defective. But it is evident the purpose of the amendment to the charter was rather to include such possible cases as were unprovided for than to make any general rule of universal application. We have not discovered, although doubtless there may exist, cases within that amendment not covered by the charter alone.

It appears to us that the language of the Public Works Act of 1873 indicates a disposition to leave the whole subject of compensation under the control of the council. The law itself was the result of legal controversies which had chiefly hinged on the validity of encroachments on municipal self-government; and the act shows a disposition to respect the liberties of the city. The provision making the salaries such as the council may *"from time to time"* establish, is not easily harmonized with any construction which would compel them to remain fixed for one or all the commissioners during periods of four years. No one salary could then be said to be from time to time established, if it could not be changed during its owner's incumbency. And we can hardly assume that this broad language, (which is that generally used where full power is left to the legislative authority and is found in many constitutions as well as statutes), was meant to be subjected to a prior charter provision, not incorporated or referred to, and which when adopted had no similar subjects to act on. It is not claimed that there would be any difficulty in the absence of the charter, in changing salaries at the expiration of any current year. It is more reasonable to suppose the salaries were to be uniform to all, than variant, although

the Legislature might have authorized a discrimination. But it cannot be admissible to control a new law by an old one, without a plain intent expressed. The usual rule is to make the old yield to the new, rather than the new to the old.

The very loose way in which charter amendments are passed precludes the resort to some of the usual indications of actual intent,—so far as ever applicable. The Legislature generally interfere very little with such provisions as they assume to have been desired, and often are led to adopt changes which have never been thoroughly considered or subjected to any scrutiny in the city. The chapter in question has been several times amended so as to entirely confound the numbers of the sections and in some instances to leave incongruous provisions standing together. We can only take things as we find them, and we cannot suppose that the Public Works Act was meant, as we certainly think it is not adapted, to have its plain language subverted by a provision in the former law which never applied to any public board, and which cannot be held as restricting future legislation containing independent provisions concerning salaries.

We think the action of the council was valid, and the mandamus must be denied with costs.

The other Justices concurred.