## KING v. NEEL, receiver.

1. While an action of trover will not, as a general rule, lie in favor of one of several tenants in common against a cotenant, for the reason that the possession of one is the possession of all, yet such an action will lie against the vendee of a cotenant who sold and delivered the entire property without the consent of the other common owners.

2. The ground of the motion for a new trial as to newly discovered evidence, in the light of the counter-showing, and in view of the evident want of diligence to obtain such evidence before the trial, is without merit. No cause for a reversal appears.

May 11, 1896. Argued at the last term.

Trover. Before Judge Turnbull. Bartow superior court. January term, 1895.

On June 17, 1879, Frank P. Gray, administrator of Lewis Tumlin, brought bail-trover against B. J. King, to recover a two ninths interest in a wool-carder and appurtenances, alleging the same to be of the value of $1,500, and of the annual rental value of $100; that King had enjoyed the profits of the same since March, 1879, and refused to deliver said carder to plaintiff or pay him the profits thereon. Defendant pleaded not guilty. On May 15, 1889, verdict and judgment were rendered for plaintiff for $600, and defendant moved for a new trial. The motion remained pending until January 31, 1895, when it was overruled, and defendant excepted. On the trial there was testimony by plaintiff, that the estate of Lewis Tumlin, of which he was administrator at the time of the filing of the action, owned an undivided two ninths interest in the property set out in the declaration; that in 1878 or 1879 Thomas Tumlin, without his knowledge, consent or authority, sold the property to defendant, that it belonged to N. S. Eaves, Thomas Tumlin and Lewis Tumlin's estate as joint owners or tenants in common, not as partners. Thomas Tumlin, at the time he sold to King, was renting the interest of Eaves and Lewis Tumlin. Plaintiff demanded the return

of the property from defendant, but he refused and claimed that he had bought it from Thomas Tumlin.    The interest of the Tumlin estate was worth about $350.    The sale of the two ninths interest of said estate was without the knowledge or consent of Eaves or plaintiff.    One Barrett testified that he had owned the two ninths interest in question, had bought it from Lewis Tumlin but could not pay for it, and let plaintiff have it back, and Lewis Tumlin's estate owned said two ninths interest when Thomas Tumlin sold it to defendant.    At that time, 1878 or 1879, the property was worth about $1,000 to $1,200, and was of the yearly value of about $200 for rent.

The motion for new trial is upon the general grounds; for error in the court's charge; and for newly discovered evidence.    The charge so assigned as error was, that if the jury should believe from the testimony that the plaintiff owned two ninths interest in the property described, and Thomas Tumlin, the owner of the remaining interests, sold the entire property to defendant without the consent of plaintiff, then plaintiff would be entitled to recover two ninths interest in the property or its value, and the value of its hire, as shown by the testimony.

The newly discovered evidence is contained in an affidavit of Thomas Tumlin, dated May 3, 1893: that he, as tenant in common with the estate of L. Tumlin and others, owned a certain lot of wool-carding machinery which he sold in March, 1879, to B. J. King for $500, a fair and reasonable price for it; that he sold it under the joint authority received by his cotenant Tumlin, and paid to Gray, administrator of Lewis Tumlin, the entire interest which said estate had therein, and Gray accepted the money so paid in satisfaction of the interest his intestate had in the machinery.    Deponent has but recently learned that his evidence was material; he has lived out of the State of Georgia for twelve years, and did not know that King was being sued on account of Gray's claim.    He never com-

municated the above information to King or his attorneys until December, 1892. There were also affidavits as to the good character for veracity of Thomas Tumlin, and that the facts stated in his affidavit were unknown to defendant and his counsel at the time of the trial; and as to their diligence.

In rebuttal of this showing, there was an affidavit by T. J. Lyon: that he knows Thomas Tumlin knew of the pending of the suit of F. P. Gray, administrator, against King for the wool-carder, etc.; that he talked to him about it, and never claimed to him that he paid Gray, administrator, for the Tumlin interest; and that he is the husband of one of the heirs, and never heard of this until recently. Thomas Tumlin is and has been for many years a hard drinker, and his memory, he thinks, is impaired by that habit. He also knows, from a minute examination of Gray's accounts, returns, etc., that he never credited the estate with any sum of money received from T. Tumlin on account of such carder. T. Tumlin remained in this county a year or more after the suit was commenced, and then moved to Coosaville, Ala., about forty-two miles from here. I heard of the sale by Tumlin to King, reported to Gray, who brought this action, and I never heard of any settlement of the case until about a year ago. He also says the Tumlin estate had a large sum of money to pay as security for said Tumlin, about $2,000, and that its collection from Tumlin is hopeless. Thinks all his property was covered up in his wife's name before he left here. He was quite intimate with Tumlin while here, and never heard him set up any claim he now sets up.

Plaintiff also introduced, as part of the counter-showing, the following cross-questions propounded by one of defendant's counsel to Gray, the original plaintiff, who had testified by depositions: "Who owned the other interest in the carder? Were not the owners of the same partners, and did they not operate the carder as such? What became of

the carder? Did not the partner of the plaintiff's intestate sell the same to the defendant, and did not the defendant pay for it in cash? When was the carder sold to the defendant? Who sold it? How did you find this fact out? State what will go to show that Thomas Tumlin, one of the partners with Lewis Tumlin in the ownership of the carder, sold the same to the defendant, and that defendant has paid for it in full, and that this sale was made with full authority of Lewis Tumlin or his representatives?"

It was conceded that Gray, the original plaintiff, died about seven years ago.

*J. W. Harris, Jr.*, for plaintiff in error.
*Neel & Swain*, contra.

LUMPKIN, Justice.

Stripped of all complication, this case turned upon the question indicated in the first head-note, and that question has been clearly settled by at least two decisions rendered by this court not long after its organization, and which seem to be well supported. See *Hall* v. *Page*, 4 *Ga.* 428, and authorities cited; *Starnes et al.* v. *Quin*, 6 *Ga.* 84. The decision of this court in both cases was pronounced by Judge Nisbet. In the former, page 435, he says: "As a general rule, it is not denied anywhere, but that trover will not lie in favor of one tenant in common against his cotenant. The reason is, that the one tenant is as much entitled to the possession as the other. The possession of one is, in law, the possession of both. . . An exception to this rule is, where there is a destruction or loss of the common property by one of the tenants. . . Another exception is found in the case of *a sale* of the property by one tenant. Tenants in common having equal right of possession, and an undivided property, one has no right to dispose of the property and transfer the possession, to the injury of the other. In this regard, they are unlike partners." In the latter case, Judge Nisbet says (page 87):

"It is true, generally, that an action of trover does not lie in favor of one tenant in common against his cotenant, because the possession of one is the possession of all; yet it will lie in case of the destruction or sale of the property."

The ground of the motion for a new trial relating to newly discovered evidence was fully met by the counter-showing. Besides, there was an evident want of diligence to obtain this evidence before the trial.

The judgment below was manifestly right.

*Judgment affirmed.*