ADSIT v. SMITH.

GROVE v. SAME.

1. CIRCUIT JUDGES—COMPENSATION—REDUCTION—POWER OF BOARD OF SUPERVISORS.

Under section 6, art. 6, of the Constitution, providing that the judges of certain circuits, in addition to the salary of $2,500 provided for by article 9, "shall receive from their respective counties such additional salary as may from time to time be fixed and determined by the boards of supervisors," the power of such board is not exhausted when it has once voted additional compensation, but it may afterwards revoke the same, even during the term of an incumbent.

2. SAME—CONSTRUCTION OF RESOLUTION.

Where, pursuant to such provision, a board of supervisors had granted an additional salary of $1,000, a subsequent resolution "fixing the salaries of the county officers and employés as follows:    *    *    *    For each of the circuit judges a salary of $2,500, as provided by statute; instead of $3,500, as heretofore ordered by the resolution of this board,"—sufficiently manifested an intention to rescind the former action.

*Certiorari* to Kent; Davis, J., presiding. Submitted September 24, 1901. Decided December 3, 1901.

*Mandamus* by Allen C. Adsit and William E. Grove to compel Connor H. Smith, county clerk of Kent county, to issue orders for the payment of salary claimed to be due to relators. From an order granting the writ in each case, respondent brings *certiorari*. Reversed.

*William E. Grove*, for relator Adsit.

*Allen C. Adsit*, for relator Grove.

*Ward & Brown*, for respondent.

MOORE, J. The two cases are exactly alike, both as to the facts and the law. At the April election, A. D. 1889, an amendment to the Constitution of this State was adopted, which provided for an additional circuit judge for the county of Kent, and also provided that the circuit judges for said county of Kent and other counties named, "in addition to the salary provided by this Constitution, shall receive from their respective counties such additional salary as may from time to time be fixed and determined by the boards of supervisors of said counties." Const. art. 6, § 6. Acting pursuant to this amendment of the Constitution, the board of supervisors of Kent county, at its October session, A. D. 1891, passed a resolution whereby it was resolved by said board that the "additional salary contemplated by said amendment to the Constitution be and the same is fixed and determined by this board to be the sum of $1,000 per annum to each of said judges from and after the 1st day of November, 1891." Relators at the April election, 1893, were both re-elected circuit judges for the term of six years commencing on the 1st day of January, A. D. 1894. The said resolution of the board of supervisors, whereby the said salaries of relators had been so fixed and determined, was in force, and they were receiving their said additional salaries under it, at

the time when they were re-elected, and at the time they entered upon the duties of their offices for the second term. At the October session of said board of supervisors in the year 1894, the same being the first regular session of said board after relators entered upon their second terms, the salaries were again fixed and determined at the sum of $1,000 for each of said judges, payable as provided in the first resolution of 1891.

At the October session of said board in the year 1896, the matter of said additional salaries of relators was brought to the attention of said board by a petition, when Mr. Dodge offered the following:

" I move that the report of the committee on salaries be amended by fixing the salaries of the county officers and employés as follows: * * * For each of the circuit judges a salary of twenty-five hundred dollars ($2,500), as provided by statute, instead of thirty-five hundred dollars ($3,500), as heretofore ordered by the resolution of this board,"—

Which was adopted.

On the 1st day of November, 1896, the relators each applied to the county clerk of said county for the customary vouchers, in the form of orders made and signed by him, drawn on the said county treasurer, for the payment of their respective salaries for the month preceding, and were informed by him that their salaries would be paid as before until the end of that year, but that no more orders would be given after the said year 1896. Said salaries were so paid until the end of said year 1896, but have not been paid since that time, nor any orders given to relators therefor.

On the 15th day of April, A. D. 1901, relators applied to the respondent, county clerk, and requested him to give to them the proper vouchers to enable them to receive from the said county treasurer their said unpaid salaries, namely, orders to be drawn upon said treasurer, and signed by said clerk, for the payment to relators of their said unpaid salaries then due to them from the 1st day of

January, A. D. 1897, to the 31st day of December, A. D. 1899, inclusive, which application respondent denied, and refused to make and deliver to them any voucher or vouchers for their unpaid salaries. The relators claim there is due to each of them, on account of unpaid salary, the sum of $3,000, with interest thereon from the respective times when the same became due in monthly installments as aforesaid. The term of office of these judges expired December 31, 1899, and April 15, 1901, a petition was filed in the circuit court asking that the clerk be compelled to issue an order for the unpaid salary. The matter was submitted to Judge Davis, who ordered the writ issued. The board of supervisors subsequently, by resolution, directed that the case be removed to this court.

The question involved is, What construction shall be put upon the words of the amendment, which provided the circuit judges, "in addition to the salary provided by this Constitution, shall receive from their respective counties such additional salary as may from time to time be fixed and determined by the boards of supervisors of said counties?" It is the claim of relators "that this provision is mandatory to the extent of imposing the duty to pay some additional salary to the circuit judges on the counties named; that the respective boards of supervisors are clothed by it with the power to fix and determine the amount of such additional salary in their respective counties, and with no other or greater authority; that they are not given the power to say whether the judges shall receive any additional salary or not; that that question is determined by the Constitution,—that they shall receive an additional salary; that the board of supervisors is made the agent to fix and determine the amount, which power is exhausted when the agent has once acted,"— citing *Douvielle* v. *Manistee Co. Sup'rs*, 40 Mich. 588; *Chapman* v. *Berrien Co.*, 50 Mich. 311 (15 N. W. 489); and *Wagar* v. *Bowley*, 104 Mich. 38 (62 N. W. 293).

It is contended:

"The Constitution fixes the salaries of the circuit judges, and the power to change those salaries has been withheld from the legislature. The power to change them is reserved to the people, and has never been delegated to any agent. Those salaries can only be changed by amending the Constitution in the manner provided by that instrument. By the Constitution the salaries of the circuit judges are fixed at $2,500 each, and in certain counties, including Kent, it declares that they shall receive salaries in addition to the salary fixed by the Constitution, and the power to fix and determine the additional salary to be paid to each judge is delegated to the boards of supervisors of those counties, respectively. They are made agents of the State to fix and determine the amount of the additional salary which the Constitution declares shall be paid. Pursuant to the provisions of the constitutional amendment of 1889, the board of supervisors of the county of Kent fixed and determined the salaries of the Kent circuit judges at $1,000 each, and, having done that, the board, according to the *Douvielle Case*, exhausted the power conferred upon it by the amendment to the Constitution. There was no power given to the board to alter, revoke, or change, but only to fix and determine, and those words do not mean change. The judicial business is a public business, not local. The judges are State, not county, officers. Their services are rendered to the State, and not to the counties of their respective districts, and the illegality, as well as the impropriety, of allowing local control or interference is emphatically declared in the *Douvielle Case*, and pointed out and discussed in the earlier case of *People* v. *Wayne Co. Auditors*, 13 Mich. 233, wherein it is said:

"'Upon an examination of our State polity before and since the adoption of the new Constitution, it will be found that many charges have been laid on counties, as such, where no benefit accrued to them in their corporate capacity, but where it was deemed a fair way of apportioning the public expenses.'"

We do not think an examination of the cases will support the conclusions drawn from them by the counsel. In the cases cited the authority conferred was "to fix and determine" the amount of salary, and the court held that, when this was done, the board of supervisors had exhausted its authority.

The rule of law in relation to the compensation of public officers has been stated as follows:

"The emoluments of an office are prescribed and allowed by law, and may be altered, increased, reduced, and regulated by law at all times, except where the constitution has expressly forbidden it." 19 Am. & Eng. Enc. Law (1st Ed.), 526.

See, also, the long list of cases cited in the note.

Mr. Mechem, in his work on Public Officers, says:

"Unless restrained by the constitution, the power authorized to · fix the compensation may, even during the term of an incumbent, alter or diminish his future compensation, or terminate it altogether." Mechem, Pub. Off. § 857.

See, also, *People* v. *Common Council of Detroit*, 38 Mich. 636; *Knappen* v. *Barry Co. Sup'rs*, 46 Mich. 22 (8 N. W. 579); *City of Wyandotte* v. *Drennan*, 46 Mich. 478 (9 N. W. 500); *Attorney General* v. *Jochim*, 99 Mich. 358 (58 N. W. 611, 23 L. R. A. 699, 41 Am. St. Rep. 606).

We are confronted, then, with the question whether a limitation is placed upon the boards of supervisors to change the additional compensation when it has once been fixed. Section 1, art. 9, of the Constitution fixes the salaries of the circuit judges at the sum of $2,500 a year. Neither the board of supervisors nor the legislature could change the amount fixed in this section, unless authorized to do so by some other provision of the Constitution. The other provision of the Constitution we have already quoted. It does not provide the salary may be made less than $2,500, but, apparently recognizing there may be more work for the judges to do in some circuits than in others, it confers upon the boards of supervisors in these circuits the right to give additional compensation. It does not suggest that, when the board of supervisors has "fixed and determined" the additional salary once, it has exhausted its powers, but, apparently recognizing that the amount of work to be done in a given circuit may change,

it provides that the judges in these circuits shall have such " additional salary as may from time to time be fixed and determined by the boards of supervisors." Not only is this not a limitation upon the board to act more than once, but it gives them, in express terms, authority to act from time to time.

It is claimed the resolution of October, 1896, does not manifest an intent to rescind the former action of the board in fixing the additional salary. It is said:

"The circuit judges were classed in the Dodge resolution as county officers or employés. The resolution was not aimed at the additional salary, and the only interpretation that can be given to it, if it can be interpreted, is to say that the intention was to fix the salary generally, and say that the circuit judges shall receive only what the State pays, or, to use the language of the Dodge resolution, to fix the salaries of the circuit judges at $2,500 each, as provided by statute."

We think this a strained construction of the language used. The resolution is not very skillfully worded, but it indicates a clear intention on the part of the board not to give any salary to the judges in addition to the salary conferred upon the circuit judges generally. The wisdom of this action upon the part of the board of supervisors is not for our consideration. We think the Constitution authorized them to act, and the order of the court below must be reversed.

The other Justices concurred.