PEOPLE v. KUPUSINAC.

1. CONSTITUTIONAL LAW—HAWKERS AND PEDDLERS—ITINERANT VENDORS OF DRUGS—DUE PROCESS—DISCRIMINATION—STATUTES.
   Statute imposing annual license fee of $25 on itinerant vendors of drugs, nostrums, and toilet preparations is not violative of due process and equal protection clauses of Federal and State Constitutions, as discriminatory or as imposing tax in guise of license (2 Comp. Laws 1929, §§ 9704, 9705; U. S. Const., Amend. 14; Mich. Const., art. 2, § 16).

As to validity of license or occupation tax on hawkers and peddlers and persons engaged in soliciting orders by sample or otherwise as an exercise of the police power, see annotation in 19 L. R. A. (N. S.) 301; 28 L. R. A. (N. S.) 265.

2. Same—Licenses—Taxation—Regulation.

   Statute imposing annual license fee of $25 on itinerant vendors of drugs, nostrums, and toilet preparations is regulatory even though it does not provide for any conditions precedent or subsequent to obtaining license except payment of fee; and said fee is not so exorbitant as to warrant claim that it is tax instead of fee, even though it is higher than actual cost of licensing and regulation (2 Comp. Laws 1929, §§ 9704, 9705).

3. Hawkers and Peddlers—Itinerant Vendors of Drugs—Taking Orders from Samples—Statutes.

   Under statute imposing annual license fee on itinerant vendors of drugs, nostrums, and toilet preparations, persons taking orders from samples for future delivery are not exempt (2 Comp. Laws 1929, §§ 9704, 9705).

4. Statutes—Construction—Earlier Act—Intent.

   Statute is not controlled by earlier act unless such intent is clearly expressed, or close relation made apparent by employment of similar phraseology.

5. Hawkers and Peddlers—Itinerant Vendors of Drugs—Statutes—Construction.

   Statute (2 Comp. Laws 1929, §§ 9704, 9705) imposing license fee on itinerant vendors of drugs, nostrums, and toilet preparations stands alone, and is not affected by general hawkers and peddlers act (2 Comp. Laws 1929, §§ 9659–9665).

Appeal from Recorder's Court of Detroit; Scallen (John P.), J. Submitted October 14, 1932. (Docket No. 206, Calendar No. 36,619.) Decided January 3, 1933. Rehearing denied March 2, 1933.

Obread Kupusinac was convicted of violating the itinerant drug vendors' act. Affirmed.

*Harry W. Meneely* and *George B. Murphy* (*Leslie P. Whelan,* of counsel), for appellant.

*Paul W. Voorhies,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, and *Edmund E. Shep-*

*herd,* Assistant Prosecuting Attorney, for the people.

BUTZEL, J. Defendant Obread Kupusinac was convicted of pursuing the trade of an itinerant vendor and hawker of drugs and toilet preparations without first securing a license, as provided for under Act No. 85, Pub. Acts 1923. The pertinent provisions of this law, also found in 2 Comp. Laws 1929, §§ 9704, 9705, are as follows:

"SECTION 1. Any itinerant or traveling vendor or hawker of any drug, nostrum, face powder, face cream, face bleach, face lotion, cosmetic, tooth powder, tooth paste, dentifrice, or other toilet preparation, or any ointment or application of any kind for the treatment of any disease, injury or deformity, before offering for sale or selling any such drug, nostrum, face powder, face cream, face bleach, face lotion, cosmetic, tooth powder, tooth paste, dentifrice, or other toilet preparation, or any ointment or application of any kind for the treatment of any disease, injury or deformity, shall pay to the director of the Michigan board of pharmacy an annual fee of twenty-five dollars, upon the receipt of which the said director shall issue a license for one year from the date of said payment.

"SEC. 2. Itinerant or traveling vendors or hawkers under the meaning of this act shall include all persons who carry on the business described in section 1 hereof, by passing from house to house or haranguing the people on the public streets or in public places or by using any art or device for attracting crowds and therewith recommending their wares and offering them for sale or who travel from place to place and hire, lease or occupy any room, building or structure for the exhibition and sale of their wares."

Defendant was in the employ of the Van Ogden Sales Corporation, which maintains a place of business in a Detroit office building and deals in foods, extracts, cosmetics, soaps, certain drugs, and household remedies, through the solicitation of orders from house to house and subsequent delivery of the merchandise. An average of 30 salesmen are regularly employed, but only about 25 per cent. of this total average over 10 days in the company's service. Defendant canvassed a home in the city of Detroit and secured an order for one bottle of camphorated oil, three boxes of aspirin tablets, one package of epsom salts, and tubes of tooth paste and shaving cream, all of which he delivered the following day. The facts are not in dispute.

In the trial court, the constitutionality of 2 Comp. Laws 1929, §§ 9704, 9705, was assailed. It was claimed that the law demands an exorbitant fee from peddlers of drugs, etc.; that, while the title of the act states as its purpose the regulation and licensing of such vendors, it contains no regulatory provisions; that it does not specify the meaning of the words, "itinerant vendor;" that it exacts fees from vendors of drugs, etc., who solicit from house to house, while it fails to do so from merchants who are not druggists; that the act is *pari materia* with 2 Comp. Laws 1929, § 9659 *et seq.*, whose provisions defendant claims would exempt him from liability, if read together with the act in question.

It is claimed on appeal that the act is in contravention of the Fourteenth Amendment to the Constitution of the United States, and article 2, § 16, of the Constitution of the State of Michigan. To sustain this contention, defendant claims that the statute is unjustly discriminatory in undertaking to collect a license fee from itinerant vendors and

hawkers of drugs, etc., while it does not tax drug stores, groceries, and others for the sale of similar goods; that the amount of the fee demanded makes it a tax under the guise of a license fee, since the fee is wholly disproportionate to the cost of licensing· and regulation; that the Constitution prevents the levy of a tax by virtue of a statute whose title describes its purpose as regulatory. Inasmuch as these questions overlap somewhat, they may be considered together.

Appellant places much stress on the case of *Chaddock* v. *Day,* 75 Mich. 527 (4 L. R. A. 809, 13 Am. St. Rep. 468), where an ordinance, requiring the payment of $10 per month for the privilege of selling fresh meat on the street in pieces or quantities of less than one-quarter of any animal, was held to be in restraint of trade and not within the legislative power of the village to enact. The court declared that it was improper to tax certain individuals under the guise of a police regulation. The case is differentiated by the fact that it was patent that the measure was a tax only, inasmuch as it served no purpose as a police measure. Health considerations could not justify the imposition of a license tax upon those selling quantities smaller than a quarter of an animal as distinguished from those retailing larger portions. Further, the act in question does not prevent the sale of food and farm products, a right somewhat jealously guarded by the courts. The act in question refers solely to drugs, nostrums, face powders, etc., does not impose an exorbitant fee, and is regulatory in nature. In *People* v. *Russell,* 49 Mich. 617 (43 Am. Rep. 478), Mr. Justice Cooley, speaking for the court, said:

"That the regulation of hawkers and peddlers is important if not absolutely essential may be taken

as established by the concurring practice of civilized States. They are a class of persons who travel from place to place among strangers, and the business may easily be made a pretense or a convenience to those whose real purpose is theft or fraud. The requirement of a license gives opportunity for inquiry into antecedents and character, and the payment of a fee affords some evidence that the business is not a mere pretense.''

While the act provides that the license shall be issued upon payment of the required fee without any other provisions whatsoever for any regulatory proceedings, either before or after issuance, its mere requirement of a license is in effect a regulation. The business of peddling has always been one that the State or municipal corporation has deemed necessary to control. The very act of licensing furnishes the governmental unit with a list of those engaged in the occupation, with some record of those engaged in a trade which may for the briefest moment attract many irresponsible persons who constantly shift from one place to another. The State at least can thus keep track of those engaged in the business and in some degree prevent totally irresponsible individuals from engaging in the house-to-house sale of drugs, etc. The very fact, as shown by appellant, that his employer maintains a staff of 30 men, only 25 per cent. of whom average over 10 days in the company's employ, indicates a lack of discrimination in the selection of salesmen and the unstable and irresponsible character of the personnel. This particular act is regulatory even though it does not provide for any conditions precedent or subsequent to obtaining the license except the payment of the fee.

It is further claimed that the fee is exorbitant in amount and that defendant's employer is made sub-

ject to the payment of a very large sum to provide licenses for this large number of itinerant salesmen whose terms of employment are so brief. This court need not concern itself with the inconvenience the act may indirectly cause others. It may be noted, however, that this very inconvenience may lead to the employment of a more stable and less shifting sales group, a salutary consequence which can hardly be labeled as an invalid exercise of the legislative power.

The license fee is not so exorbitant as to warrant the claim that the legislature imposed a tax instead of a fee. In *People* v. *Russell, supra,* a city ordinance imposing upon peddlers a license fee of $15 a year or $3 a day was held a valid regulatory measure. In *City of Grand Rapids* v. *Norman,* 110 Mich. 544, a fee of $30 a year was declared reasonable. A weekly license rate of $5 was held valid under a power to "license and regulate" in *People* v. *Baker,* 115 Mich. 199. Other license ordinances found to be valid regulatory measures include *City of Muskegon* v. *Zeeryp,* 134 Mich. 181 ($10 a week, $50 a year), and *City of Alma* v. *Clow,* 146 Mich. 443 ($3 a day, $30 a year). It is thus apparent that the fee is sufficiently small so as to warrant the conclusion that the act does not provide for a tax under the guise of a license fee. The cost of a police regulation cannot be determined with any degree of mathematical exactitude, and the fact that the fee may be slightly in excess of the cost of licensing and regulating does not deprive the act of its character as a regulatory or police measure. Moreover, discouragement of the business of peddling drugs, etc., an occupation which very readily can become a nuisance, limitation of those engaged in it through imposition of a fairly high license fee, is definitely regulation. In

*City of Duluth* v. *Krupp,* 46 Minn. 435 (49 N. W. 235), which is cited with approval in *People* v. *Baker, supra,* the court said:

"Peddling * * * is one of the kinds of business, which if not thus restrained, is very liable to become a great nuisance."

This is particularly true with respect to the peddling of drugs, etc., which may not only become a nuisance but a positive danger to the public when intrusted to the hands of irresponsible persons. Somewhat similar acts have been upheld in many jurisdictions. See *State* v. *McFall,* 112 Ore. 183 (229 Pac. 79); *State* v. *Wheelock,* 95 Iowa, 577 (64 N. W. 620, 30 L. R. A. 429, 58 Am. St. Rep. 442); *In re Gilstrap,* 171 Cal. 108 (152 Pac. 42, Ann. Cas. 1917A, 1086); *City of Walla Walla* v. *Ferdon,* 21 Wash. 309 (57 Pac. 796). In *State* v. *Miller,* 54 Ore. 381 (103 Pac. 519), it was pointed out that a proper and justifiable distinction may be made between peddlers of ordinary household goods and itinerant vendors of pharmaceutical preparations, facial applications, etc. The possible dangers attending the sale of these products by irresponsible, unlicensed vendors are obvious, and this court will not hold, under these circumstances, that the imposition of such a license fee is an attempt to levy a tax under the guise of police regulation, even though the rate may be higher than the actual cost of licensing and regulation.

Defendant maintains that the act under which he was convicted must be construed together with the general hawkers and peddlers act, 2 Comp. Laws 1929, §§ 9659–9665, which is part of the Revised Statutes of 1846. It contains the following section:

"Sec. 16. No person shall be authorized to travel from place to place within this State, for the pur-

pose of carrying to sell or exposing to sale any goods, wares, or merchandise, or to take orders for the purchase of goods, wares, or merchandise, by sample lists or catalogues, unless he shall have obtained a license as a hawker and peddler in the manner hereinafter directed.''

Defendant contends that as this section was omitted from 2 Comp. Laws 1929, § 9704 *et seq.*, under which defendant was convicted, it must follow that it was the intention of the legislature to exempt from the provisions of this later act those who took orders from samples for future delivery.

Were there anything ambiguous or obscure about the law which defendant is charged with violating, his argument of *pari materia* might possibly be considered. However, section 9704 *et seq.* apply solely to itinerant or traveling vendors or hawkers of drugs, etc., and provide (section 9709) that any persons licensed under the provisions of the act shall not be required to obtain a State license under the prior act (section 9659 *et seq., supra*). It is apparent that the later act was intended to be complete in itself, bearing no relation to any previous statute. It cannot be controlled by the former act unless such intent is clearly expressed or, at least, their close relation made apparent by the employment of similar phraseology. *People, ex rel. Chapoton,* v. *City of Detroit,* 38 Mich. 636; *People* v. *Blair,* 192 Mich. 183. It is clear that the later act under which defendant was convicted stands alone and is not affected by the provisions of any other act.

The conviction of defendant is herewith affirmed.

McDonald, C. J., and Clark, Potter, Sharpe, North, Fead, and Wiest, JJ., concurred.