JEWEL TEA COMPANY, INC., v. BOARD OF PHARMACY.
COOK COFFEE COMPANY v. SAME.

1. HAWKERS AND PEDDLERS—ROUTE SALESMEN—EXHIBITION OF
GOODS AT WAREHOUSE—STATUTES.

Company whose main business is the sale of household com-
modities such as coffees, teas, spices, extracts, baking sup-
plies, cosmetics, soaps, et cetera, for which orders from, and
deliveries to regular customers are solicited by permanently-
employed, bonded route salesmen who travel biweekly by auto-
mobile on regularly-established routes and are paid a
weekly salary and a commission and merchandise is ex-
hibited in some warehouses is not the conduct of a busi-
ness that is subject to the itinerant vendors or hawkers act
requiring payment of an annual fee for each vendor (CL
1948, § 446.301 et seq.).

2. SAME—EXHIBITION OF GOODS AT WAREHOUSE.

The exhibition of merchandise at warehouses of company
whose products are ordered by, and distributed to, regular
customers biweekly by bonded route salesmen who travel
established routes by automobile held, not the exhibition
contemplated by the itinerant vendors or hawkers act (CL
1948, § 446.301 et seq.).

3. STATUTES—CONSTRUCTION—INTENT—ORDINARY MEANING.

The words of a statute should be applied in their ordinary and
usual meaning unless it appears from the context or other-
wise in the statute that a different sense was intended.

4. HAWKERS AND PEDDLERS—CONSTRUCTION OF STATUTES.

Itinerant vendors and hawkers act requiring annual license fee
held, to have been intended to be complete in itself and not
controlled by former general act relating to licensing of hawk-
ers and peddlers (CL 1948, § 446.16 et seq.; § 446.301 et seq.).

5. WORDS AND PHRASES—ITINERANT.

The word "itinerant" is derived from a Latin word meaning
"to make a journey."

---

REFERENCES FOR POINTS IN HEADNOTES

[1–9] 40 Am Jur, Peddlers, Transient Dealers, and Solicitors § 2
et seq.
[1–9] Validity of municipal ordinance declaring house-to-house
canvassing a nuisance, or otherwise prohibiting or restricting
it. 88 ALR 183; 116 ALR 1189.
Validity of ordinance limiting hours for peddling. 55 ALR 250.
Validity and enforceability of contracts of unlicensed hawkers
and peddlers. 30 ALR 864; 118 ALR 662.

6. SAME—HAWKER.

A "hawker" is one who sells wares from place to place or by crying them in the street and, as generally used, is synonymous with "peddler."

7. HAWKERS AND PEDDLERS—PERMANENT ROUTE SALESMEN—STATUTES.

"Itinerant or traveling vendors or hawkers * * * who carry on * * * business * * * by passing from house to house" as term is used in State licensing act was not intended to apply to permanently-employed bonded route salesmen who solicit orders from, and distribute goods to, regular customers on established routes which are traversed biweekly (CL 1948, § 446.301 *et seq.*).

8. SAME—CONSTRUCTION OF STATUTES—HOUSE TO HOUSE.

The term "house to house," as used in itinerant or traveling vendors or hawkers act, should be applied only to those who go about indiscriminately selling to anyone (CL 1948, § 446.301 *et seq.*).

9. WORDS AND PHRASES—PEDDLERS—HAWKERS—ROUTE SALESMEN.

A "peddler," a synonym for "hawker," suggests an immediate sale and delivery of a commodity to whomever the occasion presents to an itinerant and, unless the term is expressly amplified by adding other traffickers, it does not include men who engage in a business of supplying a certain type of goods to regular customers on regular routes at fixed intervals.

10. COSTS — PUBLIC QUESTION — ROUTE SALESMEN — HAWKERS AND PEDDLERS—STATUTES.

No costs are allowed in suits to declare itinerant or traveling vendors or hawkers act inapplicable to plaintiffs and their bonded route salesmen who solicit orders for and deliver coffees, teas, spices, extracts, baking supplies, cosmetics, soaps, et cetera, to regular customers on established routes at biweekly intervals, a public question being involved (CL 1948, § 446.301 *et seq.*).

Appeal from Wayne; Webster (Clyde I.), J. Submitted January 13, 1953. (Docket Nos. 13, 14, Calendar Nos. 45,372, 45,373.) Decided March 10, 1953.

Bill by Jewel Tea Company, Inc., a New York corporation, and another against the director of

Michigan Board of Pharmacy for decree declaring plaintiff is not required to obtain license under CL 1948, § 446.301 *et seq.*, and other relief.

Bill by Cook Coffee Company, an Ohio corporation, and another against Michigan Board of Pharmacy and others for similar relief.

Decrees for defendants. Plaintiffs appeal. Reversed and decrees for plaintiffs entered.

*Youngjohn, Worley, Brown & Flynn* (*John W. Unger,* of counsel), for plaintiff Jewel Tea Company and another.

*Friedman, Meyers & Keys* (*Sylvan Rapaport* and *Maxwell E. Katzen,* of counsel), for plaintiff Cook Coffee Company and another.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Ernest O. Zirkalos,* Assistants Attorney General, for defendants.

BUSHNELL, J. These cases, involving similar issues, were tried together and consolidated on appeal. The principal issue is the applicability of PA 1923, No 85, as amended (CL 1948, § 446.301 *et seq.* [Stat Ann § 19.611 *et seq.*]). If the act is applicable, the secondary questions are whether it contravenes certain sections of the Constitution of the State of Michigan and is contrary to the Fourteenth Amendment to the Federal Constitution. This act reads:

"Sec. 1. Any itinerant or traveling vendor or hawker of any drug, nostrum, face powder, face cream, face bleach, face lotion, cosmetic, tooth powder, tooth paste, dentifrice or other toilet preparation, or any ointment or application of any kind for

the treatment of any disease, injury or deformity, before offering for sale or selling any such drug, nostrum, face powder, face cream, face bleach, face lotion, cosmetic, tooth powder, tooth paste, dentifrice or other toilet preparation, or any ointment or application of any kind for the treatment of any disease, injury or deformity, shall pay to the director of the Michigan board of pharmacy an annual fee of 25 dollars, upon the receipt of which the said director shall issue a license for 1 year from the date of said payment.

"Sec. 2. Itinerant or traveling vendors or hawkers under the meaning of this act shall include all persons who carry on the business described in section 1 hereof, by passing from house to house or haranguing the people on the public streets or in public places or by using any art or device for attracting crowds and therewith recommending their wares and offering them for sale or who travel from place to place and hire, lease or occupy any room, building or structure for the exhibition and sale of their wares.

"Sec. 3. Any violation of this act shall be a misdemeanor and any person upon conviction thereof shall be punished by a fine of not more than 300 dollars, or by imprisonment in the county jail for not more than 90 days or by both such fine and imprisonment in the discretion of the court.

"Sec. 4. Nothing in this act shall be construed to prevent the collection of any tax or license that may be imposed by any county, township or municipal authority.

"Sec. 5. Nothing in this act contained shall be held or construed to affect sales by traveling representatives of regularly established jobbers or of manufacturers selling to the trade by sample for future delivery from their established place of business; nor any person selling products raised upon lands leased or owned by him; nor individuals handling vegetables, fruits or perishable farm products.

"Sec. 6. Any person licensed under the provisions of this act shall not be required to obtain a State license as such vendor or hawker under any prior act."

Plaintiff Jewel Tea Company, Inc., a New York corporation, filed a bill seeking a declaration that neither it nor any of its route salesmen in the State of Michigan, including plaintiff Kenneth J. Adams, is required to procure a license for the purpose of transacting its business. Cook Coffee Company, an Ohio corporation, sought a similar declaratory decree. Each asked for injunctive relief against defendant Michigan Board of Pharmacy and its director. Jewel manufactures, packs, buys and sells household commodities, the principal items being coffees, teas, spices, extracts, baking supplies, cosmetics, soaps, et cetera. It is licensed to sell goods at retail, and has maintained an office, warehouse and place of business in the city of Detroit for more than 30 years. Its route salesmen are permanent employees, many of whom have been connected with the company for a number of years. They are paid a regular weekly salary and commission. Its 126 salesmen in the State of Michigan use automobiles in connection with their business. They travel on regularly-established routes at 2-week intervals, for the purpose of delivering previously ordered goods to regular customers, and to take orders for future deliveries. Other employees find the new customers generally from recommendations received from old customers. No merchandise is sold to any person who is not a regular customer.

Jewel contends that such a salesman is not an "itinerant or traveling vendor or hawker" within the statutory definition or the ordinary meaning of these words. Each of its employees is under a fidelity bond and acts upon definite and regular instructions.

Cook operates its business in much the same manner. Jewel has some 64,000 regular customers in the State of Michigan, with accounts receivable of approximately $440,000.

Cook, formerly a Michigan corporation, has been doing business in this State for over 30 years and owns real estate in Detroit, Flint and Grand Rapids which it uses and occupies in connection with its business. It has upwards of 75,000 regular customers and employs over 100 route salesmen, of which plaintiff Paul Truesdell is one. Its salesmen, over 1/3 of whom have been with the company for more than 10 years, are likewise full-time bonded employees who are paid weekly salaries and commissions. The nature of Cook's business in 100 or more communities of Michigan was fully described in *Cook Coffee Co.* v. *Village of Flushing,* 267 Mich 131. That case involved the construction of an ordinance which required hawkers, vendors and peddlers to be licensed.

The trial judge held that the act was "aimed" at itinerant vendors. In concluding his opinion the trial judge said regarding plaintiffs in both cases:

"It is not necessary, as I have already said, that they do something wrong. There is no evidence of that. They seem to be very reputable business people and doing business all right. But that is not the test, of course. As the attorney general has pointed out, that can not be the test as to whether they come within the act. The test, of course, is as to whether they come within the act, not whether they committed some overt act or did something wrong, something they shouldn't do, as Kupusinac did in that case, but as I say, the basis of the decision in the *Kupusinac Case* [*People* v. *Kupusinac,* 261 Mich 398], while it is mentioned as to what he did, the basis of the decision is that the method that they were doing business comes within this act.

"I therefore declare that the meaning of this act is, as contended by the attorney general, that these plaintiffs in both suits do come within the act.

"*Mr. Zirkalos:* And that the individual vendors are to be licensed?

"*The Court:* Oh yes, sure, and that the individual vendors of both companies have to secure a license under this act."

In arriving at his conclusion he relied largely upon the *Kupusinac* decision and distinguished *National Baking Co.* v. *Zabel,* 227 Wis 93 (277 NW 691).

The legislature defined the phrase "itinerant or traveling vendors or hawkers." See section 2 above quoted. The testimony clearly indicates that, in the operation of their businesses, neither company indulges in the practice of haranguing people on public streets or in public places, nor do they use any art or device for attracting crowds and therewith recommending their wares. Although merchandise is exhibited in some of their warehouses, it is not such an exhibition as is contemplated by the definitive section of the act. The only language which might apply to plaintiffs is that portion of the definition which reads, "passing from house to house."

The words of a statute should be applied in their ordinary and usual meaning, "unless it appears from context or otherwise in the statute that a different sense was intended." *Hammons* v. *Franzblau,* 331 Mich 572. See, also, *Boyer-Campbell Co.* v. *Fry,* 271 Mich 282, 297 (98 ALR. 827).

As said in the *Kupusinac Case, supra,* the act "was intended to be complete in itself, bearing no relation to any previous statute. It cannot be controlled by the former act unless such intent is clearly expressed or, at least, their close relation made apparent by the employment of similar phraseolgy." The "former act" referred to was the general act

relating to the licensing of "hawkers and peddlers."
(CL 1948, § 446.16 *et seq.* [Stat Ann § 19.541 *et
seq.*].) As to its construction, see *People* v. *Baker,*
115 Mich 199; and *Allport* v. *Murphy,* 153 Mich 486.

The act here under consideration uses the words
"itinerant or traveling vendors or hawkers," and
does not mention "peddling." The adjective "itiner-
ant" comes from the Latin "itinerari," which means
"to make a journey." Webster's New International
Dictionary (2d ed) defines this word as the "passing
or traveling about a country; going or preaching on
a circuit; wandering." Its synonyms are "travel-
ing, peripatetic, unsettled." Its antonyms are "sta-
tionary, fixed, settled." The verb "itinerate" is
defined as "to wander without a settled habitation."
A hawker is one "who sells wares from place to
place or by crying them in the street, hence a ped-
dler or packman." This authority also states that:
"Etymologically and in general use there is no dis-
tinction between *peddler* and *hawker.* * * * In
the United States *peddler* and *hawker* are used as
synonymous in statutes regulating the vending of
goods." In the English statutes, however, a distinc-
tion is made in that a peddler is one who travels on
foot, and a hawker is one who goes about with a
beast of burden or other means of artificial carriage.
The proofs do not justify the classification of the
route salesmen of Jewel or Cook as "itinerants."

The legislature defined itinerant vendors as in-
cluding "all persons who carry on the business
described in section 1 hereof, by passing from house
to house." The use of the qualifying adjective,
"itinerant," discloses that the legislature did not
intend to regulate and supervise the activities of
regularly-employed route salesmen. The Jewel and
Cook route salesmen are neither peddlers nor hawk-

ers nor intinerant or traveling vendors within the
contemplation of the statute.

In *People* v. *Russell,* 49 Mich 617 (43 Am Rep 478),
Mr. Justice COOLEY, in construing an ordinance of
the city of Coldwater in 1883, said:

"That the regulation of hawkers and peddlers is
important if not absolutely essential may be taken
as established by the concurring practice of civil-
ized States. They are a class of persons who travel
from place to place among strangers, and the busi-
ness may easily be made a pretense or a convenience
to those whose real purpose is theft or fraud. The
requirement of a license gives opportunity for in-
quiry into antecedents and character, and the pay-
ment of a fee affords some evidence that the business
is not a mere pretense."

The activities of a door-to-door peddler in Cold-
water, 70 years ago, can hardly be compared with
the present activities of the route salesmen of Jewel
and Cook.

The factual situations in the instant cases, as
pointed out by the trial judge, differ from that in
*People* v. *Kupusinac, supra.* One of the most im-
portant distinctions is that Kupusinac did solicit
from door to door, while plaintiffs Adams and
Truesdell did not solicit from house to house, but
traveled an established and regular route. The
words "passing from house to house" should be ap-
plied only to those who go about indiscriminately
selling to anyone. This distinction has been recog-
nized by the courts of a number of States, that of
Florida being typical.

In *Lane* v. *Williams,* 160 Fla 887 (37 So2d 163),
the court said:

"Lane is an employee of Jewel Tea Company
located in Jacksonville. Lane's duties are to solicit
orders for merchandise from regular customers.

His practice is to follow a regular route every 2 weeks and to call upon regular customers only. * * *

"The authorities have not clearly defined peddling. Indeed it would be difficult. At most it can little more than be described. The very idea suggests something quite different from what Lane was doing. To peddle suggests a sale and delivery to whomever the occasion presents and an immediate consummation of the transaction. See *City of Mt. Sterling* v. *Donaldson Baking Co.*, 287 Ky 781 (155 SW2d 237); *Haller Baking Co.* v. *Rochester Borough,* 118 Pa Super 501 (180 A 108); *National Baking Co.* v. *Zabel,* 227 Wis 93 (277 NW 691); *State* v. *Amick,* 171 Md 536 (189 A 817)."

The following is stated in the syllabus of *Hewson* v. *Englewood,* 55 NJL 522 (27 A 904, 21 LRA 736):

"In pursuance of our statute, the inhabitants of Englewood, in this State, passed an ordinance requiring hawkers, peddlers, and itinerant venders of merchandise to obtain a license. R., a merchant dealing in groceries in the city of New York, where, for years he has kept a store with a stock of groceries from which he supplies his customers, employed the prosecutor to drive his wagon to his customers in Englewood and take their orders and afterwards deliver the goods ordered. The prosecutor did not sell or deliver goods in any other way, and neither he nor R. had a license as required by the ordinance. Held, that the prosecutor was not a hawker, peddler, or itinerant vendor within the meaning of our statute."

In *National Baking Co.* v. *Zabel, supra,* the court said in its syllabus:

"The word 'peddler' as used in statutes regulating peddling refers to one who is an itinerant and who relies on present solicitation and dickering to do business with customers he meets in his travel as opportunity for such business arises out of immediate circumstances, and unless the term is ex-

pressly amplified by adding other traffickers, it does not include men who engage in a business of supplying at fixed intervals regular customers with a certain type of goods."

The trial judge was of the opinion that the omission of the word "peddler" from the Michigan act, and its inclusion in the Wisconsin act, distinguished that case.

The treatment of the words "peddler" and "hawker" by Webster, *supra,* requires the conclusion that the legislature must have been aware of the fact that there is no distinction between these terms and that their synonymous use in statutes regulating the vending of goods limited the application of the instant act to certain types of vendors. We, therefore, hold that the act under consideration does not apply to the present operations of plaintiffs Jewel Tea Company and Cook Coffee Company or their salesmen. Because of this determination, it is unnecessary to discuss the other questions raised on appeal regarding multiple licenses or to repeat what was said in *People* v. *Kupusinac, supra,* regarding the constitutionality of the act.

The several decrees of the trial court are vacated and decrees may be entered here in accordance with this opinion. A public question being involved, no costs will be allowed.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, SHARPE, BOYLES, and REID, JJ., concurred.