Argued March 16, decided June 1, rehearing granted August 24, reargued October 5, former opinion approved October 12, 1909. ·

## STATE *v.* ATWOOD.

[102 Pac. 295; 104 Pac. 195.]

HOMICIDE—MANSLAUGHTER IN COMMITTING ABORTION—CONSTRUCTION OF STATUTE—ELEMENTS OF CRIME—"PREGNANT WITH CHILD"—"IN CASE OF THE DEATH OF SUCH CHILD."

1. Section 1748, B. & C. Comp., provides that, if any person shall administer to any woman pregnant with a child any medicine, drug, or any substance whatever, or shall use or employ any instruments, or other means, with intent thereby to destroy such child, unless the same shall be necessary to preserve the life of such mother, such person shall, in case the death of such child or mother be thereby produced, be deemed guilty of manslaughter. *Held*, that the term "pregnant with child" as used therein designates the fœtus throughout the period of gestation, and the term "in case of the death of such child," which constitutes the consummation of the crime, equally with the death of the mother, would seem to mean the death of the fœtus either before or after quickening.

WORDS AND PHRASES—"EN VENTRE SA MERE."

2. The term "*en ventre sa mere*" comes clearly within the description "a child living at the time of its father's death."

WORDS AND PHRASES—"POSTHUMOUS CHILD."

3. A "posthumous child" is *in esse* from the time of its conception.

NUISANCE—LOCATION AND PUBLICITY.

4. There are some nuisances in which the act complained of may be wrongful, but constitutes a nuisance only by means of its location or publicity, and there may be an act or condition that is rightful, or even neces-

sary, but which may become a nuisance by the same means,.but there is also a class of nuisances arising from the use of real property, and from one's personal conduct, that are such *per se* irrespective of their location or publicity.

NUISANCE—CRIMINAL OFFENSE—KEEPING "MATERNITY HOSPITAL" FOR ABORTIONS.

5. Section 1930, B. & C. Comp., generally known as the "nuisance statute," provides that if any person shall willfully and wrongfully commit an act which grossly injures the person or property of another, or grossly disturbs the public peace or health, or openly outrages public decency, and is injurious to public morals, he shall be punished, etc. *Held*, that the acts complained of in an indictment thereunder, charging the establishment and maintenance of a public "maternity hospital" for willfully, wrongfully, and unlawfully committing, producing, and procuring abortions, and of having willfully and wrongfully committed abortions therein, openly outrage public decency, are injurious to public morals, and constitute a nuisance, though they are not performed in a public place, and though they do not disturb the peace or quiet of the community or the public.

NUISANCE—KEEPING MATERNITY HOSPITAL FOR ABORTIONS—REQUISITES OF INDICTMENT.

6. The offense of one who is guilty of a nuisance in keeping a maternity hospital for committing abortions relates to the business or condition, and an indictment therefor need not allege that the acts of defendant in producing abortions were done in cases where the operation or procurements were unnecessary, though if there was a statute authorizing the procuring of abortions in certain cases, it might be necessary to negative such exceptions.

INDICTMENT AND INFORMATION—DESCRIPTION OF OFFENSE NEGATIVING EXCEPTIONS IN STATUTE.

7. An indictment must negative exceptions in the statutory description of an offense charged.

INDICTMENT AND INFORMATION—DUPLICITY—NUISANCE—OTHER OFFENSE INCLUDED IN CHARGE.

8. An indictment, under Section 1930, B. & C. Comp., for a nuisance in keeping a "maternity hospital" for abortions, charged in connection therewith that defendants in such place, on a specified date, "did willfully and wrongfully commit and produce an abortion upon one M. R., the said M. R. then and there being a woman pregnant with child," and that they also did then and there between certain dates "willfully and wrongfully commit and produce, upon women then and there pregnant with child, the names and number of which are to the grand jury unknown, abortions, contrary to the statute," etc. *Held*, that these allegations of abortions did not state facts constituting a crime, under Section 1748, relating to manslaughter in committing abortions, and were not intended to, but were only allegations of acts done in performance of the purpose charged, which are necessary elements of the nuisance, and do not charge separate offenses.

(MR. JUSTICE KING dissenting.)

(MR. JUSTICE SLATER concurring in dissent.)

From Multnomah: JOHN B. CLELAND, Judge.

C. H. Atwood and C. H. T. Atwood were jointly indicted by the grand jury of Multnomah County, Oregon, for the crime of committing an act grossly disturbing the public peace and health, openly outraging public de-

cency and injurious to public morals. A verdict of guilty as charged in the indictment was returned by a jury, and from a judgment sentencing defendants to imprisonment in the county jail for Multnomah County, defendants appeal.        AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Marion B. Meacham*.

For the state there was a brief with oral arguments by *Mr. Andrew M. Crawford,* Attorney General; *Mr. George J. Cameron,* District Attorney, and *Mr. J. H. Page,* Deputy District Attorney.

MR. JUSTICE EAKIN delivered the opinion of the court.

Defendants were indicted by the grand jury of Multnomah County for the crime of committing an act grossly disturbing the public peace and health, openly outraging public decency, and injurious to public morals; the charge being in the following language:

"That the said C. H. Atwood and C. H. T. Atwood on the 1st day of January, 1908, then and there unlawfully conspiring, confederating and agreeing with each other thereto, did on said day, in the said county and state, willfully and wrongfuly set up, equip, furnish with apparatus, and thence continuously until the 1st day of November, 1908, keep and maintain a certain public house and public place, known as a 'maternity hospital,' with the intent and purpose of them, the said C. H. and C. H. T. Atwood, of willfully, wrongfully and unlawfully committing, producing and procuring abortions in said house and place upon women pregnant with child, and so having set up, furnished, equipped, kept and maintained the said house and place with the intent and for the purpose aforesaid, the said C. H. T. Atwood and C. H. Atwood, on the 4th day of September, 1908, in the said public house and place, known as the 'maternity hospital' aforesaid in the said county and state, did willfully and wrongfully commit and produce an abortion upon one Mahala Roberts, she, the said Mahala Roberts, then and there being a woman pregnant with child, and

did then and there, between the said 1st day of January, 1908, and the said 1st day of November, 1908, willfully and wrongfully commit and produce upon women then and there pregnant with child, the names and numbers of which women are to the grand jury unknown, abortions, contrary to the statutes," etc.

The defendants were tried thereon, and a verdict of guilty returned against them, and judgment and sentence pronounced against them thereon, from which this appeal is taken.

1. But one question is raised by the assignments of error, namely, "that the indictment upon which defendants were arraigned and convicted does not state facts sufficient to constitute a misdemeanor or crime"; defendants urging, first, that the acts were lawful acts, and were not exercised in such a manner as to openly outrage public decency, or be injurious to public morals; second, that the intent and purpose charged, unless followed by a public act, does not constitute a public nuisance; third, that no facts are alleged showing an unlawful abortion; fourth, that it is not unlawful to produce an unnecessary abortion, unless the woman is quick with child. Defendants' counsel insists that the facts alleged do not constitute a crime, because it is not alleged that the abortions were committed upon women quick with child, contending that otherwise producing abortions is lawful. Much of his argument is based upon this assumption, and he assumes that a necessary element in a violation of Section 1748, B. & C. Comp., defining manslaughter by producing abortion, is that the woman be quick with child, and this view seems to be quite prevalent. This question has never been before this court for decision, and the writer of this opinion is not able to accept defendants' view. It seems to be an unsettled question whether producing an abortion was an offense at common law, except when the mother was quick with child. It is said in *State* v. *Cooper*, 22 N. J. Law, 52 (51 Am. Dec. 248) that there does not

appear to have been any adjudication upon this point in
England, and the judge in that case holds that, unless
the mother was quick with child, an abortion was not an
indictable offense at common law. To the same effect is
*Mitchell* v. *Commonwealth,* 78 Ky. 204 (39 Am. Rep.
227; *Commonwealth* v. *Bangs,* 9 Mass. 387; *Smith v.
State,* 33 Me. 48 (54 Am. Dec. 607). But in *Mills* v.
*Commonwealth,* 13 Pa. 633, it is held that at common
law the offense was punishable, whether committed before
or after the woman became quick. This view was ap-
proved and followed in *Wells v. New England Life Ins.
Co.* 191 Pa. 207 (43 Atl. 126: 53 L. R. A. 327: 71 Am. St.
Rep. 763). This is Wharton's view, also, in his Criminal
Law (Sections 1220-1228). The opinion in *Mills* v. *Com-
monwealth,* 13 Pa. 633, is quoted with approval, and fol-
lowed in *State* v. *Slagle,* 83 N. C. 632, and the opinion in
*State* v. *Cooper* says that 1 Russell, Crimes (2 Eng. ed.)
540, and Roscoe's Criminal Evidence, 190, recognize the
same view, and 3 Chitty's Criminal Law, at page 798,
gives some precedents and forms which seem to sustain
that view. However, this discussion relates to the offense
of abortion at common law, not particularly pertinent to
the interpretation of Section 1748, B. & C. Comp., except
possibly in so far as it may aid in ascertaining the full
meaning of the term "pregnant with child," which does
not seem to be ambiguous. That section provides that
"if any person shall administer to any woman pregnant
with a child any medicine, drug, or substance whatever,
or shall use or employ any instruments or other means,
with intent thereby to destroy such child, unless the same
shall be necessary to preserve the life of such mother,
such person shall, in case the death of such child or
mother be thereby produced, be deemed guilty of man-
slaughter." In prosecutions under this statute, if such
act resulted in the death of the mother, this court only
required proof of pregnancy, and not that she was quick

with child (*State* v. *Clements*, 15 Or. 237; 14 Pac. 410),
and I believe no one will contend to the contrary; and to
sustain such a construction the term "pregnant with
child," as used in that section, designates the fœtus
throughout the period of gestation. The term, "in case
of the death of such child," which constitutes the con-
summation of the crime equally with the death of the
mother, would seem to mean the death of the fœtus,
either before or after quickening. This is the view of
the court in *State v. Dickinson,* 41 Wis. 309, under a
statute identical with ours.

2. There is nothing lacking in this statute (Section
1748) that requires a reference to the common law to aid
in its interpretation. It specifically sets out the acts
which shall constitute the crime. The common law recog-
nizes the civil rights of an "unborn child," regardless of
the stage of gestation. "An infant *en ventre sa mere,* or
in its mother's womb, is supposed in law to be born for
many purposes * * and in this point the civil law agrees
with ours." "Those who are in the womb are considered
by civil law to be, in the nature of things, as they are
capable of being benefited": 1 Blackstone, Comm. 130n;
1 Coke's Litt. 100a; 2 Coke's Litt. 244a. The term, *"en
ventre sa mere,"* comes clearly within the description, "a
child living at the time of its father's death": *Stedfast* v.
*Nicoll,* 3 Johns. Cas. (N. Y.) 18; *Barker* v. *Pearce,* 30
Pa. 173 (72 Am. Dec. 691) ; *Thelluson* v. *Woodford,* 4
Ves. Jr. 227. See Wharton, Crimes, §§ 1220-1228, as to
when life begins.

3. A posthumous child is *in esse* from the time of its
conception: *Pearson* v. *Carlton,* 18 S. C. 47; 6 Words and
Phrases, 5475; 2 Words and Phrases, 1127. In regard to
descent, our statute, Section 5590, B. & C. Comp., pro-
vides that a posthumous child shall be deemed living at
the death of its parent. To the same effect is Section
5554, relating to an unborn child not named in the will,

which includes the whole time after conception: *Northrup*
v. *Marquam,* 16 Or. 173 (18 Pac. 449). And it would
seem that "pregnant with child," as used in Section 1748,
can bear no other construction. But we do not deem a
decision of that question necessary to a disposition of this
case, and therefore proceed without deciding it.

4. The indictment does not attempt to charge a viola-
tion of any statute in the procuring of abortions men-
tioned. Section 1930, B. & C. Comp., upon which this
indictment is drawn, provides that "if any person shall
willfully and wrongfully commit any act which grossly
injures the person or property of another, or which gross-
ly disturbs the public peace or health, or which openly
outrages the public decency and is injurious to public
morals, such person, if no punishment is expressly pre-
scribed therefor by this Code, upon conviction thereof,
shall be punished," etc. This section, generally known
as the "nuisance statute," has been three times construed
recently by this court, in *State* v. *Nease,* 46 Or. 433 (80
Pac. 897) ; *State* v. *Ayers,* 49 Or. 61 (88 Pac. 653: 10
L. R. A. (N. S.) 992: 124 Am. St. Rep. 1036), and *State*
v. *Waymire,* 52 Or. 281 (97 Pac. 46). In the first case
it is held that it "was evidently intended to cover such
offenses against the public peace, public health, common
decency and public morals, and such as grossly injure
the person or property of another, which are not other-
wise made punishable by the Code," and that whatever
could have been punished at common law as injurious to
public morals may now be punishable under Section 1930,
if not made punishable by the Code, so that it is not es-
sential that the acts complained of be declared by the
Code to be crimes. In that case the acts complained of
were not crimes under the statute, nor at common law.
There are some nuisances in which the act complained of
may be wrongful, but constitute a nuisance only by rea-
son of its location or publicity, and there may be an act

or condition that is rightful, or even necessary, but may become a nuisance by reason of its location or publicity. But there is also a class of nuisances arising from the use of real property, and from one's personal conduct, that are such *per se*, irrespective of their location or publicity. 1 Woods, Nuisances, §§ 23, 24, says of acts that are nuisances *per se*: "And the existence of which only need to be proved in any locality, whether near to, or far removed from cities, towns, or human habitations, to bring them within the purview of public nuisances. This latter class are those intangible injuries which affect the morality of mankind, and are in derogation of public morals and public decency." Section 24: "Wrongs *malum in se*. This class of nuisances are of the aggravated class of wrongs that, being *malum in se*, the courts need no proof of their bad results, and require none. The experience of all mankind condemns any occupation that tampers with the public morals, tends to idleness and the promotion of evil manners, and anything that produces that result finds no encouragement from the law, but is universally regarded and condemned by it as a public nuisance." See also Section 27. In *Reaves* v. *Territory*, 13 Okl. 397 (74 Pac. 951): "It is enough to show that the practices indulged in are unlawful and destructive of public morals. No person has a right to carry on, upon his own premises or elsewhere, for his own gain or amusement, any public business clearly calculated to injure and destroy public morals." In *Rex* v. *Curl*, 11 Strange, 788, it is said, quoting from Lord Chief Justice HALE: "I do not insist that every immoral act is indictable, such as telling a lie, or the like; but, if it is destructive of morality in general, if it does, or may, affect all the king's subjects, it then is an offense of a public nature." And in *Commonwealth* v. *Shorpless*, 2 Serg. & R. (Pa.) 91 (7 Am. Dec. 632), which was a prosecution for the exhibition of an obscene picture as a common law

nuisance, in determining whether that act was a public nuisance the judge recognizes the case of *King* v. *Curl*, 11 Strange, 788, as laying down the rule that whatever tended to corrupt society was held to be a breach of the peace and punishable, adding:

"Hence it follows that an offense may be punishable, if in its nature and by its example it tends to the corruption of morals, although it be not committed in public. * * Curl was convicted of selling a book. It is true the indictment charged the act to have been in a public shop, but that can make no difference; the mischief was no greater than if he had taken the purchaser in a private room and sold him the book there. The law is not to be evaded by an artifice of that kind. If the privacy of the room was a protection, all the youth of the city might be corrupted by taking them, one by one, into a chamber, and there inflaming their passions by the exhibition of lascivious pictures. In the eyes of the law this would be a publication, and a most pernicious one."

5. In referring to the fact that unnecessary abortions are *malum in se,* and tamper with the public morals, Dr. Storer quotes with approval from another writer: "But abortion, besides being a direct crime against a positive law of God, is also an indirect crime against society. Admit its practice and you throw open a way for the most unbridled licentiousness": Criminal Abortion, page 73. And that it tends to loose morals and habits among the unmarried. Wharton, Crim. Law (7 ed.) § 1226, in a review of this whole subject, speaking of its moral effect, says: "But if the common law, in making fœticide penal, had in view the great mischief which would result from even its qualified toleration, *e. g.,* the removal of the chief restraint upon illicit intercourse, and the shock which would thereby be sustained by the institution of marriage and its incidents, we can have no authority now for withdrawing any epoch in gestation from the operation of the principle. Certainly the restraints upon illicit intercourse are equally removed; the inducements to

marriage are equally diminished; the delicacy of the woman is as effectually destroyed, no matter what may be the period chosen for the operation." And clearly the acts complained of in this indictment are injurious to public morals, and we conclude that such acts constitute a nuisance, although not performed in a public place, or may not disturb the peace or quiet of the community or the public. They do openly outrage public decency, and are injurious to public morals, and such is the effect of the acts charged, even though not done in a public place, or in view of the public: 1 Wood, Nuisances, § 23. It is said in *Commonwealth* v. *Shorpless*, 2 Serg. & R. (Pa.) 91 (7 Am. Dec. 632), a prosecution for common law nuisance in the exhibition of an obscene picture in a certain house, "that the offense may be punishable, if in its nature and by its example it tends to the corruption of morals, although it be not committed in a public place."

6. It is not necessary to allege that the acts of defendants in producing abortions were done in cases where the operations or procurements were unnecessary. The offense relates to a business or condition. If we had a statute authorizing the procuring of abortions in certain cases, it might be necessary, in an indictment in such a case as this, to negative such exceptions, but we have no such statute.

7. If this were a prosecution under a criminal statute and in the description of the offense certain exceptions are made, then such exceptions must be negatived in the indictment: *State* v. *Tamler,* 19 Or. 528 (25 Pac. 71; 9 L. R. A. 853). But the business of wrongfully and unlawfully committing and producing abortions can have no reference to, nor include instances in, the legitimate practice of medicine, in which an abortion may be necessary and lawful, and the charge of this offense need not negative such cases.

8. The charge is that the house was maintained with the intent and purpose of willfully, wrongfully and unlaw-

fully producing abortions.    It was not the purpose of the
indictment to charge that the intention of the defendants
was to commit the crime of killing by producing abortions
under Section 1748, B. & C. Comp., but that they were
conducting a business that openly outraged the public
decency and was injurious to public morals, and the
business with which the defendants are charged clearly
comes within those terms.    Evidently it was for the pur-
pose of condemning such a business that Congress enacted
Section 2491, U. S. Rev. St. (22 Stat. 489), in which it
classes "drugs and medicines for the prevention of con-
ception, or for causing the unlawful abortion" with
obscene pictures and other articles of an immoral nature,
the importation of which is prohibited, and the articles
made subject to seizure and forfeiture, and many author-
ities treat such acts as wrongful and those who make a
practice of producing abortions are referred to as abor-
tionists.    Dr. Storer says the number and success of pro-
fessed abortionists are notorious, and among others, of
those who are accomplices with the mother in these cases
he classes quacks and professed abortionists, druggists,
and "worst of all, though fortunately extremely rare,
physicians in regular standing."    He says, at page 60,
"that the public prints, the National Medical Association,
and the profession have drawn the attention of the com-
munity to the melancholy frequency and comparative
impunity which marks the practice of abortionists," and
this is the conduct and business with which the indict-
ment charges defendants, "with intent and purpose" of
willfully, wrongfully and unlawfully committing, pro-
ducing and procuring abortions in said house and place
upon women pregnant with child.

The allegations of abortion upon Mahala Roberts and
other women do not state facts that constitute a crime
under Section 1748, B. & C. Comp., and are not intended
to, but are only allegations of acts done in the perform-

ance of the purpose and intent charged, which are necessary elements of the nuisances, and do not charge separate offenses: *State* v. *Waymire*, 52 Or. 281 (97 Pac. 46).

From the foregoing statements of the law we conclude that the acts charged against defendants were not lawful, neither authorized by law, nor morally right, but constitute a nuisance *per se*, and therefore need not be shown to be performed in a public place, and we conclude that the acts charged. in the indictment are sufficient to constitute a nuisance under Section 1930, B. & C. Comp.; and the judgment of the court is affirmed.

Moore, C. J., concurs in the foregoing opinion. Justice Bean has retired from the bench since the trial of this cause, and, as Justices King and Slater dissent from the conclusions reached, therefore a majority of the court are unable to agree upon a decision, from which it follows that the judgment must be affirmed.

Affirmed.

Mr. Justice King delivered the following dissenting opinion:

I am unable to concur in the conclusion announced in the majority opinion in the foregoing action. However, as to the first point there considered, concerning the particular moment when pregnancy with child may, under the statute, be deemed to exist, I shall express no opinion. A decision upon this point is not essential to a determination of the merits of the cause, and, as observed on the same point in *State* v. *Dunn*, 53 Or. 304 (100 Pac. 258), should be reserved for future consideration, especially so in view of the fact that in the case cited, as well as in the one under consideration, each of the counsel for the respective parties to the controversies conceded that the use of the words "pregnant with child," so far as any prosecution under Section 1748, B. & C. Comp. is concerned is synonymous with the expression "quick with child," and that the same rules of law are applicable

thereto. It is well to observe, however, that, according
to the views expressed by the writer of the majority opin-
ion, fœticide constitutes manslaughter without any refer-
ence to the period of gestation. Assuming this position
to be a correct exposition and application of the law, it
follows that defendants could only have been prosecuted
for manslaughter, and are not subject to a criminal prose-
cution under Section 1930, B. & C. Comp., for that sec-
tion expressly limits prosecutions under it to instances
where "no punishment is expressly provided therefor by
the Code." In *State* v. *Nease,* 46. Or. 433 (80 Pac. 897)
it is stated and quoted with approval in the majority opin-
ion in the case under consideration, that this section of
the statute was evidently intended to cover such offenses
against the public peace, public health, common decency
and public morals, and such as grossly injure the person
or property of another, as are not otherwise made pun-
ishable by the Code, and, as there further indicated, only
such acts as were punishable by the common law may
now be punishable under Section 1930, if not otherwise
punishable by the Code. For a similar application by this
court of this rule to another act, see *State* v. *Eisen,* 53 Or.
297 (99 Pac. 282: 100 Pac. 257), where it is held that it
was not intended by the statute there under consideration
to provide either additional methods of prosecuting
crimes, nor cumulative penalties, for the prosecution and
punishment of which provisions have otherwise been
made by the statute. If, therefore, the first position
taken in the opinion is sound, the conclusion announced
as to the sufficiency of the indictment under Section 1930,
B. & C. Comp., must, as a logical sequence, be rejected.
I think, however, that, independent of the above
feature, the indictment is insufficient to sustain a
conviction of any crime known to our statute. The lan-
guage of the Code attempts no specific definition of the
offense herein sought to be established. Only broad and

general terms are used, leaving the acts which may come within its provisions to be sufficiently averred; and the rule is elementary that an indictment is not sufficient, though it charges the offense in the exact language of the statute, either where the words of the statute do not embrace a definition of the offense, or the acts themselves are not unlawful. Pleadings coming within such rule are necessarily limited to instances where the statute sufficiently sets out the facts constituting the offense, so that the defendant may have notice of that of which he is charged. Nothing can be left to implication, intendment or conclusion: 10 Enc. Pl. & Pr. 487, 503; 22 Cyc. 335; *State* v. *Packard,* 4 Or. 157; *State* v. *Perham,* 4 Or. 188; *Latimer* v. *Tillamook Co.* 22 Or. 291 (29 Pac. 734).

As stated by Mr. Justice WALDO, in *State* v. *Smith,* 11 Or. 207 (8 Pac. 343), "An indictment must be so drawn as to exclude any assumption that the indictment may be proved and the defendant still be innocent." The section under which this prosecution is brought contains no specific reference to the class of acts attempted to be charged against the accused, thereby making it impossible to charge the offense in the language of the statute. The only averments tending to bring the charge within the statute are that the defendants did wrongfully, unlawfully and contrary to the statutes, equip and maintain a certain house and place, known as a "maternity hospital," for the purpose of producing abortions upon women pregnant with child. The words "wrongful, unlawful, and contrary to the statutes in such cases made and provided" are statements of conclusions only: *State* v. *Stroud,* 99 Iowa, 16 (68 N. W. 450). Take from the indictment these words, and it will be found that the defendants are merely charged with intentionally maintaining a "maternity hospital" where abortions were produced upon various women, including one Mahala Roberts. Nothing appears within the charge to indicate that the

acts complained of were committed at such hospital, other than under such circumstances as might be necessary for the preservation of the lives of such women as may be treated there; and surely we cannot, merely by intendment or implication, charge defendants with the acts essential to bring the conduct within the criminal statute. This can only be accomplished by treating the words "wrongful, unlawful and contrary to the statutes" as being sufficient for that purpose, for the statute makes abortions a crime, and the commission of which could be in conflict with Section 1930 of the Code only where not performed for the purpose of preserving the life of the person pregnant. Sufficient facts should be stated from which it could be determined whether the acts complained of were wrongful or in violation of any of the provisions of the statute; otherwise it is obvious that defendants could plead guilty to every statement in the indictment and still not be subject to punishment under the Code.

The majority opinion holds that "if we had a statute authorizing the procuring of abortions in certain cases, it might be necessary, in an indictment in such a case as this, to negative such exceptions, but we have no such statute." This statement overlooks the fact that the common law, as well as all statutes bearing on the subject, recognize the right to commit abortions in certain cases, such as to preserve the life of the mother, etc. Indeed, Section 1748 of the Code, quoted in the opinion, contains this exception. It cannot, then, be said that abortions are either *malum in se* or a nuisance *per se*: 21 Am. & Eng. Enc. Law (2 ed.) 683; 14 Pl & Pr. 1098. Hence, under the most unfavorable view possible, it could only be such as are unnecessary and which may be committed for immoral purposes, that may come within the *malum in se,* or nuisance *per se* rule; and every rule of pleading requires that, to bring the accused within the

charge of making a business of engaging in any unneces-
sary or immoral acts of any kind, the facts must be
stated in the indictment or information showing such
condition, and not merely the conclusion that the acts
were wrongful or unlawful. In *State ex rel* v. *Malheur
County Court,* 54 Or. 255 (101 Pac. 907) this court, in an
opinion by Mr. Justice McBRIDE, in construing an aver-
ment there under consideration that "no notice was ever
issued or posted as by law provided," holds that "the
words 'as by law provided' make the allegation a mere
statement of a conclusion of law," further observing:
"It is equivalent to saying that, in the pleader's judg-
ment, there was something in the manner or time of
posting, or in the substance of the notices, that rendered
them invalid. There was, therefore, no question of fact
to be tried by the court." Although that was a manda-
mus proceeding, the reasoning there invoked applies
with equal force to the case in hand. The mere assertion
that the acts of defendant were "wrongful, unlawful
and contrary to the statutes," etc., amounts only to a
declaration that in the opinion of the grand jury the
abortions committed, and maintenance of equipments
and a building therefor, was in violation of law and a
menace to the public, etc., which, without stating the
facts from which such conclusion is deduced, states no
issuable facts upon which the accused may be tried.

The charge intended by the indictment is a criminal
charge; and, while it refers to the business affairs in
which the accused may be engaged, the manner in which
it is intended to allege the business was conducted is
criminal in character, and the defendants were con-
victed accordingly, and, as recently held by this court
in *State* v. *Eisen,* 53 Or. 297 (100 Pac. 257), and numer-
ous other authorities there cited from this court, "an
information or indictment must negative such excep-
tions as are expressly or impliedly included in the stat-

ute under which the charge against the accused may be preferred." This does not mean that the exception must be contained in the particular section of the statute under which the charge is preferred, but the statute is to be taken and considered as a whole, and was so applied and recognized in the case last cited. Applying the statute in the most favorable light possible to the state, there must be read with Section 1930, B. & C. Comp., a further statement that the conducting of a hospital for the procuring of unnecessary abortions shall be deemed to come within the provisions thereof, making the negativing of the exceptions (or statements of facts showing such operations to have been unnecessary) essential to the sufficiency of an indictment filed under such section.

I feel compelled, therefore, to dissent from the conclusion reached by the majority, and think the indictment clearly insufficient to sustain the judgment of conviction of defendants, and that the judgment of the lower court should be reversed.

MR. JUSTICE SLATER concurs in this dissent.

---

Decided October 12, 1909.

ON REHEARING.

[104 Pac. 195.]

Statement by MR. JUSTICE McBRIDE.

This case was argued and submitted during the March term, 1909. MR. JUSTICE BEAN having retired from the bench after the argument and before the decision, and the remaining four members of the court being equally divided in opinion as to what judgment ought to be rendered, the case, under the statute, stood affirmed. A re-examination before a full bench being considered desirable, a rehearing was granted.        AFFIRMED.

MR. JUSTICE McBRIDE delivered the opinion of the court..

For the reasons stated by Mr. Justice Eakin in his opinion, I am of the opinion that the judgment of the court below should be affirmed. As to the question whether producing an abortion upon a woman not quick with child is a violation of Section 1748, B. & C. Comp., I express no opinion, as I do not consider that it arises in this case, and do not wish to be understood as either dissenting from or concurring with the views of Mr. Justice Eakin on that subject. In all other respects I agree with his views. As a majority of the court now concur in the result reached in Mr. Justice Eakin's opinion, the judgment will be affirmed.          Affirmed.

Justices King and Slater adhere to their former dissenting opinion.