NATIONAL BAKING COMPANY, Respondent, vs. ZABEL, District Attorney, and others, Appellants.

HATHAWAY BAKING COMPANY, Respondent, vs. SAME, Appellants.

OSWALD JAEGER BAKING COMPANY, Respondent, vs. SAME, Appellants.

*January 14—February 15, 1938.*

For the appellants there was a brief by the *Attorney General, R. M. Orchard,* assistant attorney general, and *Herbert J. Steffes,* district attorney of Milwaukee county, and oral argument by *R. M. Orchard* and *Kenneth M. Orchard* of Madison.

For the respondents there was a brief by *Miller, Mack & Fairchild,* attorneys for the National Baking Company, *Herbert L. Mount,* attorney for the Hathaway Baking Company, and *Maurice A. McCabe,* attorney for the Oswald Jaeger Baking Company, and oral argument by *Leon F. Foley* and *Vernon A. Swanson,* all of Milwaukee.

FAIRCHILD, J.  The very early definition of "peddler" still persists, and when the word "peddler" or the term "busi-

ness of peddling" is used in an ordinance or statute it is understood to refer to one who is an itinerant, and who relies on present solicitation and dickering to do business with customers he meets in his travel as opportunity for such business arises out of immediate circumstances. Unless the term is expressly amplified by adding other traffickers, it is not expected or understood to include men who engage in a business of supplying at fixed intervals regular customers with a certain type of goods. The confusion over the understanding of who is a peddler arises from uncertainty whether the practice dealt with in particular cases was an outgrowth of peddling or an evolution of regular business bearing superficial resemblances to peddling; and whether the legislative policy involved was that of protecting the public from practices associated with peddling or of preserving local markets for local merchants. In any event, it must be recognized that a zone exists in which this line distinguishing these methods of doing business is difficult to discern. The legislature in dealing with the subject of peddling prior to 1905 used a method of including objectionables and excluding favorites. This was pointed out very definitely in the case of *State v. Whitcom,* 122 Wis. 110, 114, 99 N. W. 468, where it was said by Mr. Justice DODGE:

"Our statute relating to the licensing and punishing of peddlers and transient merchants (sec. 1570 *et seq.,* Stats. 1898, as amended by ch. 341, Laws of 1901) is an edifice of composite architecture, made up of a series of portholed turrets for offense against the obnoxious, and sheltered corridors to shield the favorites of the successive legislatures which have contributed to the conglomerate now under consideration."

Following that decision, and until 1931, the statutes regulated all peddlers without specific exception.

The attempts to define the business of peddling so as to include practices from the standpoint of policing against the

irresponsibility of peddlers and annoyances associated with the plying of the arts and practices of peddling may be said to be fairly successful, while the effort to write a definition satisfactory to local merchants and others seeking favorable advantages has not. In the case of *Dewitt v. State,* 155 Wis. 249, 144 N. W. 253, a statute (sec. 1570, Stats. 1913) which required a hawker or peddler to obtain a license for which a fee must be paid, was held to be a valid exercise of the police power, and it was there said, in effect, that one who goes about from place to place selling at retail from house to house goods which he carries with him is a peddler, even though he may have a fixed business domicile and may carry with him only a part of his stock of goods. The definition there suggested contemplates one engaged in the business of peddling which must include in the absence of more specific legislative delimitation one who speculates on the possibility of acquiring customers by thus going from house to house. As already intimated, the usual and ordinary acceptation of the term "business of peddling" carries the idea of one relying on present solicitation of chance patrons for purchases of uncertain quantities and making concurring deliveries, as distinguished from one dealing with regular customers whose regular purchases are so nearly fixed as to be comparatively certain. Whether the question is approached from the point of view of police power or from that of the power of taxation, a peddler is generally regarded as one who relies for his business upon the immediate circumstances as they arise as he goes from house to house conducting and concluding each transaction upon the ground. This is not the same thing as meeting day after day regular customers to whom the dealer has at least a moral obligation, and who in turn rely on his coming for the daily supply of perishable goods. The serviceman knows his field, is expected to and evidently does estimate with considerable

exactness the needs of his customer, and the customer depends on the regular coming of the serviceman and the constant supply of this character of food thus afforded. There is left none of the uncertain factors that must exist in order to constitute peddling or, if they do exist, they are reduced to such a minimum as to justify ignoring them. Custom has developed a marked distinction between the business of peddling and that which may be described as the modern service delivery of necessary but perishable goods. At least in the case of goods that are perishable or subject to spoiling within a reasonably short time, it is a fair inference that the manner of doing business disclosed by the record constitutes a special service rather than peddling, a delivery system accommodated to the nature of the goods and the needs of the customer rather than one of contemporaneous solicitation and sale. The case of *Whipple v. South Milwaukee,* 218 Wis. 395, 261 N. W. 235, was concerned with an ordinance in which the common council of that city specificly defined as "peddling" the method of merchandising followed by Whipple. The ordinance was found to be invalid because of exceptions therein provided which resulted in making it discriminatory, and that case does not control this. We are dealing with a case in which the defendants are not accused of crying or hawking their wares, and the doctrine to be gathered from the cases and texts cited as aids in interpreting the statute leaves their service and delivery method of doing business outside of the definition of the business of a peddler as referred to in sec. 129.01, Stats.

*By the Court.*—Judgments affirmed.