# EXCELSIOR BAKING COMPANY v. CITY OF NORTHFIELD.

77 N. W. (2d) 188.

May 25, 1956—No. 36,780.

*Lucius A. Smith* and *Charles Alan Wright,* for appellant.
*Sawyer & Lampe,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying plaintiff's motion for a new trial.

By this action plaintiff seeks judgment declaring defendant city's peddler ordinance to be either invalid or inapplicable to plaintiff's house-to-house service for the sale and distribution of bread and bakery goods.

Plaintiff has its bakery and principal place of business in Minneapolis where its bakery goods are manufactured. Its products, which are sold direct to the consumer, are inspected by state and Federal authorities and are wrapped in sanitary packages. Plaintiff maintains a large fleet of delivery trucks together with a staff of

driver salesmen who take orders and deliver the bakery goods to the consumers ordering them.

Approximately for one week during the month of January 1954, four employees of plaintiff called at the residences of a large number of the residents of the defendant city of Northfield *without first having been requested to do so* by any of such residents. The purpose of the call was to inform defendant's residents of the service offered by plaintiff and to obtain their signatures on "invitation cards"[1] requesting plaintiff's serviceman to call at the signer's home and take his order for such bakery goods as he might desire. Subsequent to the week-long solicitation conducted by plaintiff's four employees, several of plaintiff's driver salesmen continued to call upon additional residents of defendant city for the purpose of securing more customers in the manner outlined above. Occasionally a neighbor of one of the signers of the "invitation cards" requested the delivery of plaintiff's bakery products, whereupon he was also asked to sign a card. Plaintiff has never taken orders for or delivered bakery goods to any resident who had not first signed one of the "invitation cards." In addition, it does not appear that plaintiff has called on a particular resident more than once without having an invitation to come back to take orders and make deliveries.

Defendant city informed plaintiff that it would prosecute plaintiff and its representatives, if it continued to take orders and deliver bakery goods to defendant's residents, under two separate but identical ordinances enacted in 1937 and 1947 respectively (Ordinances 64 and 80 of the City of Northfield). This ordinance, commonly known as the "Green River Ordinance," provides that:

---

[1]These invitation cards read as follows:

"CUSTOMERS ORDER CARD
"EXCELSIOR BAKING COMPANY
"Mpls., Minn.            At. 8211

"I hereby request the Excelsior Baking Co. Service Man to call daily at my home and take my order for such bakery goods as I may desire. I also order of you bread, bakery goods and pastries to be delivered at my home regularly on every week day, any order subject to cancellation.

"Name  ...................................................................

"Address  .................................................................."

"SECTION 1. The *practice* of going in and upon private residences in the City of Northfield, Minnesota, by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise, *not having been requested or invited so to do* by the owner or owners, occupant or occupants of said private residence, *for the purpose of soliciting orders for the sale of goods,* wares and merchandise, or for the purpose of disposing of or peddling or hawking the same, *is hereby declared to be a nuisance,* and punishable as such nuisance as a misdemeanor." (Italics supplied.)

Plaintiff commenced this action for a declaratory judgment declaring the ordinance either invalid or inapplicable to the plaintiff, and also for an injunction restraining defendant city from enforcing the ordinance against plaintiff. Defendant in its counterclaim prayed for an injunction enjoining plaintiff from violating the ordinance. The trial court found for the defendant and permanently enjoined plaintiff, its agents, and employees from going upon and entering private residences in the city of Northfield to solicit and obtain, without prior invitation, order cards, and further enjoining plaintiff from taking orders for and delivering bakery goods to those who had already signed the written invitations or orders. This appeal is from an order denying plaintiff's blended motion for amended findings or in the alternative for a new trial.

In ascertaining whether plaintiff's sales and delivery service falls within one of the nuisance classifications established by the ordinance, no time need be spent in pointing out why plaintiff is neither an itinerant merchant nor a transient vendor; the latter are transitory or temporary traders, whereas the plaintiff maintains not only a permanent place of business but a regular service for an established clientele.[2]

Plaintiff's sales activities can be a nuisance within the meaning of the ordinance only if such activities constitute plaintiff a "solicitor," "peddler," or "hawker." The latter two nouns may here be considered synonymous since there is no distinction between the

[2]See, State ex rel. Mudeking v. Parr, 109 Minn. 147, 150, 123 N. W. 408, 409.

terms "peddler" and "hawker" as used in statutes relating to the vending of goods.[3] We need consider therefore only the implications of the two terms "solicitor" and "peddler" in determining whether plaintiff's sales activities constitute a nuisance.

Over 50 years ago this court in City of St. Paul v. Briggs, 85 Minn. 290, 88 N. W. 984, 89 A. S. R. 554, in determining whether the defendant was a peddler, held that there are five elements requisite to constitute a peddler, namely: (1) That he should have no fixed place of dealing but should travel around from place to place; (2) that he should carry with him the wares he offers for sale, not merely samples thereof; (3) that he should sell them at the time he offers them, not merely enter into an executory contract for future sale; (4) that he should deliver them then and there, not merely contract to deliver them in the future; and (5) that his sales should be made to consumers and not to dealers.[4] The foregoing definition of a peddler was then recognized in other jurisdictions.[5]

In order to escape the regulatory restrictions pertaining to peddlers, the house-to-house vendors of merchandise apparently sought to circumvent the peddler ordinances by adopting the practice of soliciting the orders first and deferring actual delivery of the goods to a later time. (See elements 2, 3, and 4 of the Briggs case definition.) Subsequently, the ordinances for the regulation of peddling were generally amended to include these house-to-house vendors who, in point of time, separated the act of taking the order from the act of delivering the merchandise. In other words, it follows that ordinances expressly applicable to both solicitors and peddlers are enactments dealing with the same annoying and disturbing practice,

---

[3] Jewel Tea Co. v. Board of Pharmacy, 335 Mich. 673, 57 N. W. (2d) 425; see State ex rel. Mudeking v. Parr, 109 Minn. 147, 123 N. W. 408, wherein this court said that the two terms as used in a statute constituted one group and defined them indiscriminately; Webster's New International Dictionary (2 ed.) (1947) pp. 1146, 1802.

[4] See, State ex rel. Mudeking v. Parr, 109 Minn. 147, 123 N. W. 408.

[5] 15 Am. & Eng. Encyc. of Law (2 ed.) p. 291; City of South Bend v. Martin, 142 Ind. 31, 41 N. E. 315, 29 L. R. A. 531, and cases cited in note; Annotation, 89 A. S. R. 557.

namely, the house-to-house vending of merchandise. In fact, the ordinance herein makes no distinction between solicitors and peddlers as a source of the annoying practice declared to be a nuisance. In any event, the act—whether it be that of a solicitor or of a peddler—constituting the nuisance is the uninvited call upon the householder in the hope of making a chance sale.

We come to the basic question of whether an uninvited initiatory call upon all, or the majority, of the householders of an urban residence area, as a preliminary step to the establishment of a regular route service for the sale and delivery to regular customers of the perishable and daily necessaries of life such as bread and milk, constitutes a nuisance within the meaning of the ordinance. In answering this question we must not overlook the basic nature of a nuisance and also the mischief which the ordinance was enacted to remedy (M. S. A. 645.16[3, 6]). Certain pursuits may be nuisances per se in that they are inherently a nuisance at all times and under all conditions. Other pursuits which are inherently legitimate and not a nuisance per se may become nuisances in fact or per accidens by virtue of the surroundings or the manner in which they are conducted.[6] The instant ordinance by its text relates only to a nuisance in fact and not a nuisance per se since it prohibits only the *uninvited* act of entering upon private premises. If the act of entering upon a private premise were a nuisance per se, no permission or invitation of the householder would make it lawful.[7]

Nuisance is not a static concept and that is particularly true with respect to a nuisance in fact. A pursuit which once was not a nuisance may subsequently, through evolutionary changes in the surrounding social and economic conditions, become a nuisance in fact. Likewise a calling may be removed from its once nuisance status by changes in the manner of its performance. Evolutionary changes in our social and economic environment may likewise give rise to pur-

---

[6]City of Duluth v. Krupp, 46 Minn. 435, 49 N. W. 235; Rowe v. City of Pocatello, 70 Idaho 343, 218 P. (2d) 695; State v. Atwood, 54 Ore. 526, 102 P. 295, 104 P. 195, 21 Ann. Cas. 516; 39 Am. Jur., Nuisances, § 11; 66 C. J. S., Nuisances, § 3; Black, Law Dictionary (3 ed.) pp. 1263, 1264.

[7]City of McAlester v. Grand Union Tea Co. 186 Okl. 487, 98 P. (2d) 924.

suits, customs, and practices which bear a superficial resemblance to those of an earlier period but which are nevertheless basically different. Legal concepts born of the conditions, customs, and desires of one period are seldom applicable without modification to the problems and pursuits of the later period. Cases arising since Bracton's day illustrate:

"* * * that the changing views of people, the changing living conditions of communities, and the developed social structure of man as the years have worn away have been slowly heard, gradually appreciated, and finally enveloped in the decisions of our highest tribunals."[8]

The vocation of peddling fell into disfavor with the common law at an early date. Peddlers were referred to as "Those deceitful Fellows who went from Place to Place, * * * and * * * like Persons that with *Hawks* seize their Game where they can find it." Morrill v. State, 38 Wis. 428, 437, 20 Am. R. 12, 16, reversed, 154 U. S. 626, 14 S. Ct. 1206, 23 L. ed. 1009.[9] The foregoing historical epithets have of course no application to the many honest persons engaged in this calling, but it does illustrate the grounds upon which parliament centuries ago regulated and restricted this occupation.[10] Aside from a certain financial irresponsibility growing largely out of the impermanent and temporary habits of peddlers, and the tendency of some of them to make fraudulent statements in the sale of their goods, and of a few of them to commit crimes collateral to their uninvited visitation to private homes, they have also, irrespective of any dishonesty or fraud, fallen into disfavor because of their annoying and disturbing methods of solicitation.[11] The uninvited ringing of doorbells by a peddler (or by his hybrid cousin the solicitor peddler) cannot be treated as an isolated or infrequent disturbance of a single householder since it tends to become a repe-

[8] 6 Rocky Mountain L. Rev. 85, 91.

[9] See, 25 Hen. VIII, c. 9, § 6 (4 Stat. at Large, p. 270) ; 33 Hen. VIII, c. 4, § 5 (5 Stat. at Large, p. 68) ; 8 and 9 Wm. III, c. 25 (10 Stat. at Large, p. 80) ; 40 Am. Jur., Peddlers, Transient Dealers, and Solicitors, § 7.

[10] See, Morrill v. State, *supra.*

[11] See, 40 Am. Jur., Peddlers, Transient Dealers, and Solicitors, § 7.

titious practice indulged in by one itinerant vendor after another. Judicial notice has been taken that this practice is a nuisance in fact. Town of Green River v. Fuller Brush Co. (10 Cir.) 65 F. (2d) 112, 88 A. L. R. 177. It is largely the cumulative effect of such repetitious and frequent annoyance of the householders which has justifiably led to the widespread enactment of ordinances prohibiting the practice as a public nuisance. Clearly, acts which annoy, disturb, and inconvenience people in their homes, or which reasonably tend or are likely to do so, and which, though performed singly, reasonably tend in cumulative effect to annoy and disturb the normal repose of an entire neighborhood, are public nuisances.[12] The disadvantages resulting from the repetitious annoyance which is visited upon communities as a byproduct of peddling far outweigh any advantages resulting to householders from the opportunity to buy merchandise for which they have no immediate or pressing need.

Confusion in determining who is a peddler arises from uncertainty as to whether the practice dealt with in a particular case is an outgrowth of peddling or an evolution of a regular business bearing but a superficial resemblance to peddling. National Baking Co. v. Zabel, 227 Wis. 93, 277 N. W. 691. In the law of nuisance, as in the law of negligence, everything is relative. There are no fixed, inflexible standards. Public convenience and reasonable necessity are controlling considerations, and regard must be given to the time, place, and all the other circumstances of a particular case.[13]

It would be an anachronism to hold that plaintiff's manner of doing business constitutes peddling. Plaintiff's sales methods, rather than being an outgrowth of peddling, are the evolutionary product of modern mechandising as applied to the perishable and daily necessaries of life.[14] It cannot be said that plaintiff's solicitors, who come but once to inquire if the householder desires to patronize an estab-

[12]Our legislature has defined a public nuisance as the unlawful doing of an act which shall *annoy*, injure, or endanger the safety, health, *comfort*, or *repose* of any considerable number of persons. M. S. A. 616.01(1).

[13]14 Dunnell, Dig. (3 ed.) § 7240.

[14]See, National Baking Co. v. Zabel, *supra*.

lished service for the delivery of a perishable and daily necessary of life, are a nuisance to the reasonable man. The law cannot base its concepts of nuisance upon the extremes of temperament in human nature but must adapt them to the comforts of persons of ordinary tastes and susceptibilities. The convenience to the householders of being able to rely upon a regular service for the delivery of fresh bread and bakery goods far outweighs the slight annoyance that comes from the uninvited initiatory call which places the service in operation. In National Baking Co. v. Zabel, 227 Wis. 93, 98, 277 N. W. 691, 693, it was aptly said:

"* * * Custom has developed a marked distinction between the business of peddling and that which may be described as the modern service delivery of necessary but perishable goods. At least in the case of goods that are perishable or subject to spoiling within a reasonably short time, it is a fair inference that the manner of doing business disclosed by the record constitutes a special service rather than peddling, a delivery system accommodated to the nature of the goods and the needs of the customer rather than one of contemporaneous solicitation and sale."

Furthermore, a single initiatory call to institute a special service for the perishable necessaries of life does not constitute, and is not likely to become, a *practice* within the meaning of the ordinance. We hold therefore that an uninvited initiatory call upon all or the majority of the householders of an urban area, as a preliminary to the subsequent establishment of a regular route service for the sale and delivery to customers of the daily necessaries of life which are perishable or subject to spoiling within a reasonably short time such as bread and milk, does not constitute a nuisance within the meaning of an ordinance prohibiting peddlers and solicitors from making uninvited calls upon householders to sell merchandise. See, State v. Amick, 171 Md. 536, 189 A. 817; Haller Baking Co. v. Rochester Borough, 118 Pa. Super. 501, 180 A. 108; City of Mt. Sterling v.

Donaldson Baking Co. 287 Ky. 781, 155 S. W. (2d) 237; National Baking Co. v. Zabel, *supra.*[15]

The order of the trial court is reversed.

Reversed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

---

[15]We have not overlooked City of Duluth v. Krupp, 46 Minn. 435, 49 N. W. 235, wherein the defendants, who were retail butchers, sent out an employee to deliver meat to fill orders previously given. In addition to the meat required to fill such orders, the employee carried with him other meat which he cut, weighed, and sold not only to chance purchasers who came out on the street to his wagon, but also to other purchasers obtained by a house-to-house solicitation. That decision, holding defendants to be peddlers, obviously is not in point.