STATE of Minnesota, Respondent,

v.

Diane Marcella HARTMANN, et al., Appellants.

No. A03–1674.

Court of Appeals of Minnesota.

June 22, 2004.

Mike Hatch, Attorney General, Minnesota Street, St. Paul, MN; and Michael K. Junge, McLeod County Attorney, Mark Metz, Assistant County Attorney, Glencoe, MN, for respondent.

Gary K. Wood, Blackwell Igbanugo, P.A., Minneapolis, MN, for appellants.

Considered and decided by HARTEN, Presiding Judge, SCHUMACHER, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellants Diane Marcella Hartmann and Michael Otto Hartmann challenge

their convictions of selling meat without a license, in violation of the Minnesota Consolidated Food Licensing Law, Minn.Stat. ch. 28A (2000), and selling custom-processed meat, in violation of the Minnesota Meat and Poultry Inspection Act, Minn. Stat. ch. 31A (2000). Appellants contend that their activity was exempt from prosecution by operation of applicable constitutional and statutory provisions. We affirm.

## FACTS

The facts of this matter are undisputed. At all times relevant to this appeal, appellants owned and operated a farm in Gibbon, Minnesota, where they raised cows and hogs for market and slaughter. Appellants had the animals custom processed by Lafayette City Meats; the meat was then returned to appellants in packages labeled "Custom Not For Sale."

Between approximately May and December 2001, United States Department of Agriculture (USDA) and Minnesota Department of Agriculture (MDA) compliance officers—through surveillance and a series of controlled buys—determined that on the first Friday of each month, appellants were selling the custom-processed, uninspected meat directly to consumers from a van parked in a residential driveway; customers purchased the meat on both a walk-up and a pre-order basis. On December 7, 2001, an MDA compliance officer approached appellant Diane Hartmann and informed her that she and her husband were in violation of Minn.Stat. § 28A.04 (2000) (selling food without a license) and Minn.Stat. § 31A.10(4) (2000) (selling custom-processed meat). The officer issued appellants a written report of her findings and an order to discontinue the illegal sales.

By letter sent to the MDA on December 26, appellants asserted that their failure to obtain a license was constitutionally protected by Minn. Const. art. XIII, § 7, entitled "No License Required to Peddle," and statutorily exempted from Minn.Stat. ch. 28A (2000), the food-licensing law; they also asserted that their sale of custom-processed meat was statutorily exempted from Minn.Stat. ch. 31A (2000). Appellants further informed the MDA that its failure to rebut their assertions within ten days would signal its "agreement" with those assertions and render the "complaint [against appellants] void." The MDA did not reply. On January 29, 2002, appellants informed the MDA by letter that its failure "to comply timely to rebuttal [of the earlier letter]" placed it "under estoppel."

On March 8, 2002, the state filed a complaint charging appellants with one count of failing to obtain a license from the Commissioner of Agriculture prior to manufacturing, processing, selling, handling, or storing food, in violation of Minn.Stat. § 28A.04, and one count of unauthorized sale of custom-processed meat, in violation of Minn.Stat. § 31A.10(4). The complaint was mailed to appellants' home address but was returned unopened because appellants receive their mail through general delivery. When appellants failed to appear at the scheduled hearing, the district court issued warrants for their arrest, and they were arrested and served with the complaint. Appellants filed a motion to dismiss the charges, again arguing that their charged activity was protected by constitutional and statutory provisions; they also argued—as they had in their January 2002 letter to the MDA—that the MDA was "estopped" from prosecuting them by its failure to "timely respond" to their December 2001 letter.

After the district court denied appellants' motion to dismiss, the parties agreed to submit the matter to the court on stipulated facts pursuant to Minn. R.Crim. P.

26.01, subd. 3. The district court found appellants guilty as charged. This appeal follows.

## ISSUES

1. Was appellants' failure to obtain a license to sell food protected by Minn. Const. art. XIII, § 7, or statutorily exempt from the Minnesota Consolidated Food Licensing Law?

2. Was appellants' sale of custom-processed meat protected by Minn. Const. art. XIII, § 7, or statutorily exempt from the Minnesota Meat and Poultry Inspection Act?

## ANALYSIS

■ Appellants challenge the district court's application of statutory and constitutional provisions to the stipulated facts as well as the constitutionality of the statutes under which they were prosecuted. Questions of statutory interpretation and the application of the law to undisputed facts are issues of law, which we review de novo. *State v. Loge*, 608 N.W.2d 152, 155 (Minn.2000); *State v. Larose*, 673 N.W.2d 157, 165 (Minn.App.2003). When evaluating constitutional challenges, we presume the constitutionality of statutes and will declare them unconstitutional with extreme caution and only when absolutely necessary. *State v. Larsen*, 650 N.W.2d 144, 147 (Minn.2002).

### I.

Appellants do not dispute that they failed to obtain a license to sell food as required by the Minnesota Consolidated Food Licensing Law, Minn.Stat. ch. 28A (2000), which provides that "[n]o person shall engage in the business of manufacturing, processing, selling, handling, or storing food without having first obtained from the commissioner a license for doing such business." Minn.Stat. § 28A.04,

subd. 1. Instead, appellants contend that their activity was protected by Minn. Const. art. XIII, § 7, entitled "No license required to peddle," which provides that "[a]ny person may sell or peddle the products of the farm or garden occupied and cultivated by him without obtaining a license therefor." They further contend that the statutory licensing requirement is unconstitutional in that it conflicts with the constitutional provision. We disagree.

■ We conclude first that the constitutional provision is not applicable to appellants because they did not "peddle" products as the term is used therein. The supreme court has defined a "peddler" as a person who (1) has no fixed place of dealing, but travels around from place to place; (2) carries with him the wares he offers for sale, not merely samples thereof; (3) sells them at the time he offers them, not merely entering into an executory contract for future sale; (4) delivers them then and there, and does not merely contract to deliver them in the future; and (5) makes sales to consumers, and not exclusively to dealers in the articles sold by him. *Excelsior Baking Co. v. City of Northfield*, 247 Minn. 387, 390, 77 N.W.2d 188, 191 (1956). "It is generally held that, if any one of these elements be absent from the regular dealings of a vender, he is not a peddler, whatever else he may be." *City of St. Paul v. Briggs*, 85 Minn. 290, 292, 88 N.W. 984, 984–85 (1902). The particular and distinguishing activity of the peddler is "the house-to-house vending of merchandise." *Excelsior Baking Co.*, 247 Minn. at 391, 77 N.W.2d at 191.

Here, appellants did not engage in house-to-house vending. The charged sales took place at a fixed location of dealing on a regular, scheduled basis; appellants also entered into executory contracts for future sales by accepting telephone

pre-orders. By their acts, appellants cannot be defined as or considered peddlers entitled to the protection of Minn. Const. art. XIII, § 7.

■ The constitutional provision is also inapplicable to the charged acts because the meat products sold by appellants cannot reasonably be considered "products of the farm or garden occupied and cultivated by [a person]," as the phrase is used in article XIII, section 7. "Cultivated" is not defined in the Minnesota Constitution or statutes, and must therefore be defined "according to [its] common and approved usage." Minn.Stat. § 645.08(1) (2002). As commonly used, "[to] cultivate" means "[t]o improve and prepare (land), as by plowing or fertilizing, for raising crops; till," or "[t]o grow or tend (a plant or crop)." *The Am. Heritage Dictionary* 454 (3d ed.1992). The supreme court has observed that the function of Minnesota's constitutional provision excluding peddlers from licensing requirements is to recognize "the fact that tillers of the soil stand in a peculiar position in reference to the marketing of their products." *Minn. Wheat Growers' Coop. Mktg. Ass'n v. Huggins,* 162 Minn. 471, 480, 203 N.W. 420, 424 (1925) (commenting on article I, section 18 of the Minnesota Constitution of 1857, under which the peddler-licensing exception was previously codified).

■ In support of their argument that the term "cultivate" may refer to meat raised on a farm, appellants cite to a 1932 attorney general's opinion interpreting the constitutional peddling provision and stating that "products ... from animals actually raised on a man's farm ... may be peddled by him without a license." Op. Att'y Gen. 290–J–9 (Dec. 27, 1932). "When appropriate, opinions of the attorney general are entitled to careful consideration by appellate courts, particularly where they are of long standing." *Billig-*

*meier v. Hennepin County,* 428 N.W.2d 79, 82 (Minn.1988). But those opinions are, at best, of limited persuasive value, *id.;* moreover, the attorney general's opinion is inapposite here in that it addresses licensing requirements applicable to peddlers, a category that we have already determined excludes appellants. Here, appellants' charged acts did not include plowing, fertilizing, or tilling land, and we therefore conclude that their meat products are not "cultivated" as the term is used in article XIII, section 7, of the Minnesota Constitution.

■ Appellants argue that the statutory licensing provision is unconstitutional because it conflicts with article XIII, section 7, which precludes the state from restricting the manner in which a farmer's products may enter the market by requiring licenses. We disagree. We observe first that the statutory licensing provision explicitly intends to protect the public health and welfare and as such is a valid assertion of the state's police powers. *See Brevik v. Kite Painting, Inc.,* 416 N.W.2d 714, 718 (Minn.1987) (stating that "the state has no greater duty" than to create statutes under its police powers in order to protect its citizens). We will therefore uphold the provision so long as it has a rational basis and does not impinge upon fundamental rights. *See Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 813–814, 96 S.Ct. 2488, 2499–2500, 49 L.Ed.2d 220 (1976).

Appellants contend that because they have a fundamental right to sell legal farm products without a license, any licensing scheme impinging upon that right must be strictly scrutinized to determine its constitutionality. *See State ex rel. Morrow v. LaFleur,* 590 N.W.2d 787, 796 (Minn.1999) (stating that where a "fundamental right is at stake, the state action is subject to strict scrutiny"). In *State v. Wright,* we rejected a similar argument in the context of a

constitutional challenge to the state's marijuana laws. There, we wrote that "[b]ecause this state's marijuana laws are a reasonable, non-arbitrary exercise of police power, we must analyze only whether article XIII, section 7, creates for the farmers or growers of this state a fundamental liberty to sell or peddle their products." 588 N.W.2d 166, 168 (Minn.App.1998), *review denied* (Minn. Feb. 24, 1999).

We concluded that the provision creates no such liberty, writing that although article XIII, section 7, of the constitution

> confers upon farmers a privilege to sell their agricultural products ... [n]othing suggests that this privilege, intended to help farmers bring their crops to market, creates for farmers a fundamental liberty to sell farm products. To the contrary, numerous reasonable restrictions, other exercises of the state's police powers, govern the manner in which a farmer's products may enter the market.... The right to sell or peddle farm products is not a fundamental liberty.

*Id.*

Appellants argue that the holding in *Wright* is inapposite as limited to sales of controlled substances or adulterated products and cannot be used to restrict the unlicensed sale of "non-controlled wholesome food products" whose "sale is not per se illegal." We disagree. In *Wright,* our conclusion that there is no fundamental right to sell farm products was supported by reference to *State v. Parr,* 109 Minn. 147, 152, 123 N.W. 408, 410 (Minn.1909), and *Minn. Wheat Growers' Coop.,* 162 Minn. at 480, 203 N.W. at 424, neither of which concerns the sale of contraband. We specifically cited the Minnesota Food Law, Minn.Stat. ch. 31 (2002), which regulates the manufacture, distribution, and sale of food, as an example of a legitimate exercise of state police powers that "govern the manner in which a farmer's prod-

ucts may enter the market." *Wright,* 588 N.W.2d at 168.

The issue in *Wright,* as here, was not the legality of the product offered for sale, but whether the state's restriction on the sale conflicted with a fundamental right. *Id.* (declining to reach the issue of whether the constitutional provision's reference to "farm products" extends to intoxicating marijuana). Because we now conclude, as we did in *Wright,* that "[t]he right to sell or peddle farm products is not a fundamental liberty," *id.,* we hold that the licensing statute is a reasonable, and constitutional, exercise of the state's police power.

■ Appellants next argue that their unlicensed sale of food was exempted from prosecution by Minn.Stat. § 28A.15, subds. 1–2, which provides that the licensing provisions of chapter 28A "shall not apply to ... [p]ersons selling the products of the farm or garden occupied and cultivated by them, or to persons not regularly engaged in the business of manufacturing and selling food." We hold that this provision is not applicable to appellants' conduct for at least three reasons. First, we have already held that the phrase "persons selling the products of the farm or garden occupied and cultivated by them" does not designate appellants' sale of meat. Second, although the exclusion applies to "persons not regularly engaged in the business of manufacturing and selling food," appellants were so engaged.

Third, we observe that Minn.Stat. § 28A.15, subd. 3, which immediately follows the provisions containing the exclusion claimed by appellants, itself excludes from the licensing requirements "[a] farmer slaughtering personal animals, rabbits or poultry, on the farmer's own farm for: (a) personal use; or (b) the use of the farmer's immediate family." As the dis-

trict court observed, this limited personal-use and immediate-family exclusion would be rendered superfluous if subdivision 2 were interpreted as authorizing the unlicensed sale of meat products to the general public. We hold that appellants' failure to obtain a food-sale license was not exempted from prosecution by Minn.Stat. § 28A.15, subds. 1–2.

## II.

Appellants were convicted of violating Minn.Stat. § 31A.10, subd. 4 (2000), which forbids any person to "sell, offer for sale, or possess with intent to sell meat derived from custom processing." With respect to this violation, appellants argue first that their activity was constitutionally protected by Minn. Const. art. XIII, § 7. We hold that appellants' sale of custom-processed meat is no more protected by the constitutional peddling provision than was their failure to obtain a food-sale license, and for the same reasons: (1) the constitutional provision does not apply to appellants or their charged behavior and (2) the statutory provision forbidding the sale of custom-processed beef is a reasonable exercise of the state's police powers that restricts the manner in which farmers may bring meat to market but does not impinge on any fundamental right.

■ Appellants next argue that their sale of meat was exempted from prosecution by Minn.Stat. § 31A.15, subd. 1(1) (2000), which provides that chapter 31A's inspection requirements of subdivision 4 do not apply

> to the processing by a person of the person's own animals and the owner's preparation and transportation in intrastate commerce of the carcasses, parts of carcasses, meat, poultry, poultry food products, and meat food products of those animals exclusively *for use by the owner* and members of the owner's household, nonpaying guests, and employees.

(Emphasis added.) In their briefs and at oral argument, appellants contended that because "use" is not defined or limited in the statute, the term could reasonably designate their sale of meat products derived from their own animals. But this argument appears irrelevant in light of the specific prohibition, in Minn.Stat. § 31A.10, subd. 4, against the sale of custom-processed meat. The exemption provided in Minn.Stat. § 31A.15, subd. 1(1), explicitly applies only to inspection requirements found elsewhere in that chapter and does not purport to excuse any activity otherwise expressly prohibited, such as the sale of custom-processed meat. Even if the exemption provided in Minn. Stat. § 31A.15, subd. 1(1), did authorize the sale of custom-processed meat, it would not apply to appellants, whose charged activity did not consist of "the processing by a person of the person's own animals," as provided in the statute, but involved having the meat processed by another party. And the exemption only applies where the meat is used "by the owner and members of the owner's household, nonpaying guests, and employees," which is not the case here. We hold that section 31A.15, subd. 1, does not exempt appellants' activity from prosecution.

Finally, we briefly address appellants' argument that they are entitled to dismissal of the action against them because (1) the state engaged in prosecutorial misconduct by refusing to grant their December 2001 request for an administrative hearing and (2) the summons and complaint were never properly served.

■ As to the allegation of prosecutorial misconduct or vindictiveness, appellants cite no authority for the proposition that they were entitled to an administrative hearing upon receipt of the administrative

order to stop the unlicensed sale of custom-processed meat or for the proposition that the state commits misconduct by issuing a criminal complaint against persons reasonably believed to be engaging in criminal conduct. This allegation is without merit.

■ As to service of process, the record supports appellants' contention that they never received the March 2002 summons and complaint. But appellants do not indicate record support for their contention that the state knew at the time that the service was defective or caused arrest warrants to issue when the summons and complaint were returned unopened. Appellants argue that Minn. R.Crim. P. 3.03, subd. 4, requires the prosecutor to ensure personal service of a summons returned unserved. This argument is imprecise in that the rule allows, but does not compel, the prosecutor to effect personal service under those circumstances. We conclude that appellants are not entitled to dismissal of the action for prosecutorial misconduct or defective service.

## DECISION

Provisions of the Minnesota Consolidated Food Licensing Law and the Minnesota Meat and Poultry Inspection Act restricting, respectively, the sale of food without a license and the sale of custom-processed meat are constitutional notwithstanding Minn. Const. art. XIII, § 7. Appellants' charged activity was not exempted from prosecution by provisions of the statutes under which they were charged. Finally, appellants have not shown that dismissal of the action against them was warranted by prosecutorial misconduct or defective service.

**Affirmed.**